[No. E009290. Fourth Dist., Div. Two. June 8, 1993.]

BRAVO VENDING, Plaintiff and Appellant, v.
CITY OF RANCHO MIRAGE, Defendant and Respondent.

389

## Counsel

Munger, Tolles & Olson, Mark B. Helm, Gary D. Roberts and Lynn D. Crandall for Plaintiff and Appellant.

Jean Leonard Harris, City Attorney, for Defendant and Respondent.

Louise H. Renne, City Attorney (San Francisco), Burk E. Delventhal and Karen B. Konigsberg, Deputy City Attorneys, as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

McKINSTER, J.—Appellant Bravo Vending (Bravo) appeals from a judgment against it on its action for declaratory relief and a permanent injunction and its petition for a writ of mandate, both of which sought to prevent the enforcement of an ordinance adopted by the City of Rancho Mirage (City). We affirm.

### Factual and Procedural Background

On December 6, 1990, the City adopted its Ordinance No. 488, which: forbade the retail sale of "any cigarette or any tobacco product or cigarette paper or cigarette wrapper[1] at any place in the City without a license"; established an annual license fee; prohibited sales of cigarettes to minors; and forbade the sale of cigarettes "through the use of a vending machine."

Bravo operates cigarette vending machines in various business locations within the City. On February 20, 1991, Bravo filed an action for declaratory and injunctive relief against the City. It sought a declaration that the portion of Ordinance No. 488 which prohibited the use of cigarette vending machines was preempted by Penal Code section 308,[2] and thus was invalid on its face. For the same reason, it prayed for the issuance of preliminary and permanent injunctions restraining the City from enforcing that portion of the ordinance. Simultaneously, Bravo filed a separate petition for a writ of mandate, seeking the issuance of a peremptory writ preventing the enforcement of the ban on cigarette vending machines.

Two days later, both actions were consolidated, and an alternative writ of mandate was issued. At the hearing, the trial court found that section 308 did not preempt the City's prohibition of cigarette vending machines. Since the determination of that legal issue was dispositive of both the petition for a writ of mandate and the action for declaratory and injunctive relief, the trial court entered a judgment against Bravo on both actions. This timely appeal followed.[3]

### Discussion

This case presents only one issue: Does section 308 preempt that portion of the City's ordinance which forbids the sale of cigarettes through vending machines?

### A. Standard of Review

In evaluating the extent, if any, to which section 308 preempts the City's ordinance, we must interpret both pieces of legislation. ■ "[T]he construction of statutes and the ascertainment of legislative intent are purely questions of law. This court is not limited by the interpretation of the statute

---

[1] For convenience, we shall hereinafter refer to all of the enumerated items collectively as "cigarettes."

[2] Unless specified otherwise, all further section references are to the Penal Code.

[3] Pursuant to a petition by Bravo, we stayed the enforcement of that portion of the ordinance which bans cigarette vending machines, pending determination of the appeal.

made by the trial court . . . ." (*Burnsed* v. *State Bd. of Control* (1987) 189 Cal.App.3d 213, 218, fn. 3 [234 Cal.Rptr. 316].) Nor are we limited to the evidence presented on the question in the trial court. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

## B. THE CITY'S ORDINANCE

Following the adoption of Ordinance No. 488, its operative provisions were codified as chapter 5.24 of the City's municipal code. On July 25, 1991, the City adopted Ordinance No. 502, which amended Rancho Mirage Municipal Code sections 5.24.020 and 5.24.030. As thus amended, that chapter provides:

"*5.24.010 License required—Application—Issuance.* No person shall keep for retail sale, sell at retail or otherwise dispose of any cigarette or any tobacco product or cigarette paper or cigarette wrapper at any place in the city without a license. Application for a license shall be made to the city on a form supplied by the city. The application shall state the full name and address of the applicant, the location of the building and part intended to be used by the applicant under the license, the kind of business conducted at such location and such other information as shall be required by the application form. Upon the filing of an application with the department of economic development, it shall be presented to the department head for consideration. If granted by the department head, a license shall be issued by the city upon payment of the required fee. (Ord. 488 §1, 1990).

"*5.24.020 License—Fee.* A. The annual license fee for a cigarette vending license shall be twenty-five dollars.

"B. No person shall be licensed to sell cigarettes through a vending machine. (Ord. 502 § 1, 1991: Ord. 488 § 2, 1990).

"*5.24.030 Prohibited sales.* No person shall sell or dispense any cigarettes or tobacco product, a cigarette paper or cigarette wrapper through the use of a vending machine. (Ord. 502 § 2, 1991: Ord. 488 § 3, 1990)."

■ The ordinance considered by the trial court differed in some respects.[4] However, "[u]nder settled principles, the version of the ordinance in force at present is the relevant legislation for purposes of this appeal. 'It is

---

[4]Specifically, the amendment added the provision in Rancho Mirage Municipal Code section 5.24.020 that "[n]o person shall be licensed to sell cigarettes through a vending machine." At the same time, it deleted the first sentence of section 5.24.030 of the municipal

. . . an established rule of law that on appeals from judgments granting or denying injunctions, the law to be applied is that which is current at the time of judgment in the appellate court.' " (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302], quoting from *Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13, 18 [81 Cal.Rptr. 440].) The same rule applies in an appeal from mandamus proceedings. (*Callie, supra,* at p. 19.)

Because the current version of an ordinance controls, the issues raised by an appeal may be rendered moot by an amendment which either repeals or significantly modifies the portion of the ordinance to which the challenge is directed. (*Callie, supra,* 1 Cal.App.3d at pp. 18-19 [reversing judgment and directing the trial court to dismiss the action where the portion of the ordinance which it attacked had been repealed]; *Building Industry Assn.* v. *City of Oxnard* (1985) 40 Cal.3d 1, 3 [218 Cal.Rptr. 672, 706 P.2d 285] [reversing the judgment for the trial court's reconsideration of the modified ordinance].) That is not the case here, because the only sentence of the ordinance which Bravo challenges ("No person shall sell or dispense any cigarettes or tobacco product, cigarette paper or cigarette wrapper through the use of a vending machine.") was reenacted without change. (Cf *In re Dapper* (1969) 71 Cal.2d 184, 189 [77 Cal.Rptr. 897, 454 P.2d 905].)[5]

For these reasons, in evaluating the validity of the City's regulations, we shall apply the language of chapter 5.24 of its municipal code (Chapter 5.24) as amended on July 25, 1991.

## C. SECTION 308

The sale of cigarettes to minors has been a criminal offense in this state since at least 1892, when section 308 first took effect. (Stats. 1891, ch. 70, § 1, p. 64.) Following an amendment in 1983, that section consisted primarily of three elements: (1) it proclaimed the knowing sale of cigarettes to minors to be a misdemeanor; (2) it required that any cigarette dealer post a copy of that law, and described the penalties to be imposed for the failure to do so; and (3) it declared that local governments were free to further regulate

---

code, which formerly provided that "[n]o person shall sell or give away any cigarette or any tobacco product, cigarette paper or cigarette wrapper to any person under the age of eighteen (18) years." (Ord. No. 502.)

[5]Not only was that sentence from Rancho Mirage Municipal Code section 5.24.030 repeated in the amended version, but as previously noted, a redundant sentence was added as section 5.24.020, subdivision B: "No person shall be licensed to sell cigarettes through a vending machine." Because the two provisions are substantially identical, we consider Bravo's challenge to extend to that new sentence as well.

the sale or display of cigarettes to minors. (Stats. 1983, ch. 1092, § 265, p. 4034.)[6]

As the result of the passage of Senate Bill No. 1960 (1987-1988 Reg. Sess.),[7] authored by Senator Petris, section 308 was revised again in 1988. As amended, it now provides:

"(a) Every person, firm or corporation which knowingly sells, gives, or in any way furnishes to another person who is under the age of 18 years any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or any other instrument or paraphernalia that is designed for the smoking or ingestion of tobacco, products prepared from tobacco, or any controlled substance, is subject to either a criminal action for a misdemeanor or to a civil action brought by a city attorney, a county counsel, or a district attorney, punishable by a fine of two hundred dollars ($200) for the first offense, five hundred dollars ($500) for the second offense, and one thousand dollars ($1,000) for the third offense.

"Notwithstanding Section 1464 or any other provision of law, 25 percent of each civil and criminal penalty collected pursuant to this subdivision shall be paid to the office of the city attorney, county counsel, or district attorney, whoever is responsible for bringing the successful action, and 25 percent of each civil and criminal penalty collected pursuant to this subdivision shall be paid to the city or county for the administration and cost of the community service work component provided in subdivision (b).

"Proof that a defendant, or his or her employee or agent, demanded, was shown, and reasonably relied upon evidence of majority shall be defense to

---

[6]The full text of that version of former section 308 read as follows:

"(a) Every person, firm or corporation which knowingly sells or gives or in any way furnishes to another person who is under the age of 18 years any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or any other instrument or paraphernalia that is designed for the smoking or ingestion of tobacco, products prepared from tobacco, or any controlled substance, is guilty of a misdemeanor.

"(b) Every person, firm or corporation which sells, or deals in tobacco or any preparation thereof, shall post conspicuously and keep so posted in his or their place of business a copy of this act, and any such person failing to do so shall upon conviction be punished by a fine of ten dollars ($10) for the first offense and fifty dollars ($50) for each succeeding violation of this provision, or by imprisonment for not more than 30 days.

"The Secretary of State is hereby authorized to have printed sufficient copies of this act to enable him to furnish dealers in tobacco with copies thereof upon their request for the same.

"(c) Nothing in this section or any other provision of law shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county or a city and county regulating the sale or display to persons under the age of 18 years of items described in this section."

[7]All references to Senate Bill No. 1960 are to the bill designated as such for the 1987-1988 Regular Session.

any action brought pursuant to this subdivision. Evidence of majority of a person is a facsimile of or a reasonable likeness of a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to, a motor vehicle operator's license, a registration certificate issued under the Federal Selective Service Act, or an identification card issued to a member of the armed forces.

"For purposes of this section, the person liable for selling or furnishing tobacco products to minors by a tobacco vending machine shall be the person authorizing the installation or placement of the tobacco vending machine upon premises he or she manages or otherwise controls and under circumstances in which he or she has knowledge, or should otherwise have grounds for knowledge, that the tobacco vending machine will be utilized by minors.

"(b) Every person under the age of 18 years who purchases or receives any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or any other instrument or paraphernalia that is designed for the smoking of tobacco, products prepared from tobacco, or any controlled substance shall, upon conviction, be punished by a fine of fifty dollars ($50) or 25 hours of community service work.

"(c) Every person, firm or corporation which sells, or deals in tobacco or any preparation thereof, shall post conspicuously and keep so posted in his, her, or their place of business a copy of this act, and any such person failing to do so shall upon conviction be punished by a fine of ten dollars ($10) for the first offense and fifty dollars ($50) for each succeeding violation of this provision, or by imprisonment for not more than 30 days.

"The Secretary of State is hereby authorized to have printed sufficient copies of this act to enable him or her to furnish dealers in tobacco with copies thereof upon their request for the same.

"(d) For purposes of determining the liability of persons, firms, or corporations controlling franchises or business operations in multiple locations for the second and subsequent violations of this section, each individual franchise or business location shall be deemed a separate entity.

"(e) It is the Legislature's intent to regulate the subject matter of this section. As a result, no city, county, or city and county shall adopt any

ordinance or regulation inconsistent with this section." (Stats. 1988, ch. 1045, § 1, pp. 3393-3394.)[8]

### D. Does Section 308 Preempt Chapter 5.24?

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) ■ " 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' " (*Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534], quoting from *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].)

"Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]." (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681]; accord, *Sherwin-Williams*, *supra*, 4 Cal.4th at p. 897.)

Thus, local legislation is preempted if it "would do violence to the already existing state provisions" by duplicating or contradicting them, or if "the language in the state statutes denied the subject matter to local bodies . . . ." (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 682-683 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385].) These are examples of express preemption.

When the statute does not expressly state whether its regulation of a certain field is to be exclusive of any other, an intent to preempt local regulatory authority may sometimes be implied from "the whole purpose and scope of the legislative scheme." (*People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150].)

The Supreme Court has sometimes characterized the preemption analysis as a three-step process: (1) Does the local regulation explicitly contradict any provision of state law? (2) Does it duplicate state law? (3) If the local regulation is neither contradictory nor duplicative, does state law impliedly preempt the field of regulation? (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 291-292 [219 Cal.Rptr. 467, 707 P.2d 840].)

■ Conceptually, however, an explicit contradiction between an ordinance and a state statute can take either of two forms. One is where the

---

[8]Section 308 was amended further in 1989 by adding subdivision (f), which sets forth conditions under which the Director of Corrections may sell cigarettes to confined minors who are at least 16 years old. (Stats. 1989, ch. 223, § 1, p. 1247.)

language of the ordinance directly contradicts the operative language of the statute, e.g., by penalizing conduct which the state law expressly authorizes, or by purporting to permit conduct which the statute forbids. The other form occurs when the regulatory language of the ordinance does not contradict any specific portion of the statutory regulation, but the passage of the ordinance itself contradicts the Legislature's intent, expressly stated in the statute, that no local government shall regulate conduct within that same "field" or subject matter. This distinction was implicitly recognized in *Cohen* when it listed contradiction and entry into an area fully occupied by general law as separate examples of conflicts between ordinances and state laws. (40 Cal.3d at p. 290.)

Accordingly, to avoid a classification system which lumps two distinct concepts under the single title of "contradiction," the better analysis consists of four questions, which in order of increasing difficulty may be listed as follows: (1) Does the ordinance duplicate any state law? (2) Does the ordinance contradict any state law? (3) Does the ordinance enter into a field of regulation which the state has expressly reserved to itself? (4) Does the ordinance enter into a field of regulation from which the state has implicitly excluded all other regulatory authority? (*Sherwin-Williams, supra,* 4 Cal.4th at pp. 902-903; *Candid Enterprises, Inc., supra,* 39 Cal.3d at p. 886.)

### 1. *Duplication*

The only provision of state law which Bravo contends to be in conflict with Chapter 5.24 is section 308. When Chapter 5.24 was enacted by Ordinance No. 488, it did contain a provision which duplicated section 308's prohibition against sales of cigarettes to minors. However, that portion of Chapter 5.24 was not challenged by Bravo, and in any event is no longer before us, having been repealed by Ordinance No. 502. **(5)** No portion of the text of Chapter 5.24 as presently constituted duplicates any provision in section 308. Therefore, the alleged preemption of Chapter 5.24 cannot be based upon its duplication of state law.

### 2. *Contradiction*

The only subject matter of the challenged portion of Chapter 5.24 is the sale of cigarettes through vending machines, which it prohibits. However, nowhere in section 308 is the use of vending machines to sell cigarettes expressly authorized. Because Chapter 5.24 "does not prohibit what the statute commands or command what it prohibits" (*Sherwin-Williams, supra,* 4 Cal.4th p. 902), it does not contradict section 308.

### 3. *Express Reservation of Exclusive Authority*

In subdivision (e) of section 308, the Legislature was obviously attempting to express the degree to which that section was designed to preempt local

regulation: "It is the Legislature's intent to regulate the subject matter of this section. As a result, no city, county, or city and county shall adopt any ordinance or regulation inconsistent with this section."

■■ Bravo contends that the Legislature intended to regulate the subject matter of the section to the exclusion of any local regulation. On the other hand, the City argues that the Legislature intended to preclude, not all local regulations, but only those inconsistent with the statute. As will be shown, while the unfortunate language chosen by the Legislature is far from clear, we conclude that Bravo is correct.

As phrased, the first sentence is so self-evident as to be meaningless. Had the Legislature *not* intended to regulate that subject matter, it would not have adopted legislation concerning that subject. ■■ ■■ However, in construing the Legislature's intent, we must give a statutory provision "a reasonable and common sense interpretation," rather than one which is technically correct but absurd. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].) We must also endeavor, if possible, to give significance to every sentence of a statute. (*Ibid.*) Applying those rules of statutory interpretation to the first sentence, it appears that the Legislature intended to *exclusively* regulate the subject matter of section 308.

Unfortunately, that interpretation is not easily harmonized with the other sentence of subdivision (e) of section 308, which provides that local governments are prohibited from adopting regulations which are "inconsistent" with that section. If the state statute occupies the entire field of regulation, then this sentence is an unnecessary restatement of the legal effect of that exclusive occupation. Furthermore, by suggesting that *consistent* regulations are permissible despite that express preemption of the field, the second sentence is misleading.

Nevertheless, we are prepared to accept these incongruities because the alternative interpretation—i.e., that the Legislature intended, not to preempt the entire field, but only to prevent any local legislation which would be contradictory to the express provisions of section 308—is even less attractive. That construction of the statute robs the first sentence of subdivision (e) of any significance whatsoever. Indeed, if the Legislature's intent was simply to prevent contradictory local legislation, it need not have added subdivision (e) at all, since the constitutional prohibition against local ordinances which contradict state law requires no statutory invocation to be effective. (Cal. Const., art. XI, § 7.)

In short, given the choice between an interpretation which gives significance to the subsection and one which renders it entirely redundant, we choose the former.

Nothing in the legislative history dissuades us from that choice, because both interpretations find equal support there. ▮▮▮▮ The reports of a legislative committee and of the Legislative Analyst state that section 308 "supersedes any local government ordinance or regulation pertaining to the sale of tobacco to minors." (Sen. Rules Com. Rep. on Sen. Bill No. 1960, as amended Aug. 17, 1988, p. 2; Legis. Analyst's Office, Analysis of Sen. Bill No. 1960, as amended Aug. 2, 1988, p. 1.)[9] On the other hand, other analyses speak only of prohibiting "inconsistent" ordinances.[10]

Finally, our choice of the proper interpretation is supported by the application of another rule of statutory construction, "the principle that a material change in the language of a legislative enactment is ordinarily viewed as showing an intent on the part of the Legislature to change the meaning of the statute . . . ." (*Long Beach Police Officers Assn.* v. *City of Long Beach*

---

[9]Another analysis by the Legislative Counsel, quoted by Bravo, asserts that subdivision (e) of section 308 "makes it clear that the Legislature intended to fully occupy the field governing the distribution of tobacco products to persons under the age of 18 years." However, that opinion is not admissible as evidence of legislative intent.

The rationale for considering the written analyses of legislative staff members is that, while those analysts have no decisionmaking authority themselves, "it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) Similarly, since the Legislative Counsel is required to consider all pending legislation (Gov. Code, § 10234), and since the "Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature" (*Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 428, fn. 5 [173 Cal.Rptr. 917], overruled on another ground in *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 617 [7 Cal.Rptr.2d 550, 828 P.2d 691]), "it is reasonable to presume that the Legislature adopted [a bill] with the intent and meaning expressed in [the Legislative Counsel's] digest of the bill" (*Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439]; accord, *People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434 [155 Cal.Rptr. 704, 595 P.2d 139]).

Here, however, the analysis cited by Bravo was not contained in the digest to Senate Bill No. 1960, or to any other legislation pending during the 1987-1988 Regular Session. Instead, it is expressed only in a letter from the Legislative Counsel to Senator Dills in April of 1990, two years after the amendment to section 308. Therefore, it provides no indication of how subdivision (e) of section 308 was understood at the time it was enacted by those who voted to enact it.

[10]For instance, the Assembly Ways and Means Committee Republican Analysis of Senate Bill No. 1960, dated August 10, 1988, in summarizing the provisions of the bill, concludes that it "prohibits cities and counties from adopting any ordinance or regulation inconsistent with these provisions." The Legislative Counsel's Digest to the final version of the bill includes a virtually identical characterization of the bill's effect: no local government could "adopt any ordinance or regulation inconsistent with the above provisions." (Legis. Counsel's Dig., Sen. Bill No. 1960, 4 Stats. 1988 (Reg. Sess.) Summary Dig., p. 336.) Similarly, Senator Petris, the author of the bill, testified before an Assembly committee that the then-proposed amendments to his bill would "preempt local and county ordinances or regulations which are inconsistent with State law." (Testimony before Assem. Public Safety Com., June 27, 1988.)

(1988) 46 Cal.3d 736, 744-745 [250 Cal.Rptr. 869, 759 P.2d 504]; accord, *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 493 [159 Cal.Rptr. 494, 601 P.2d 1030].) Prior to its amendment in 1988, § 308 had expressly authorized local ordinances "regulating the sale or display to persons under the age of 18 years of items described in this section." (Former § 308, subd. (c).) The repeal of that subdivision, and its replacement with the materially different language of the new subdivision (e), indicates that the Legislature no longer intended to permit dual regulation in this field.

### a. *The Subject Matter of Section 308*

 Having determined that the Legislature intended to preempt all local government regulation of the subject matter of section 308, what did the Legislature understand to be that "subject matter"? "How the relevant field occupied by the . . . preemptive state legislation is defined is often crucial to the result: 'If the definition is narrow, preemption is circumscribed; if it is broad, the sweep of preemption is expanded.'" (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.*, supra, 39 Cal.3d at p. 886, fn. 4., quoting from *California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 27-28 [61 Cal.Rptr. 618].)

Bravo proposes three alternative definitions of the section's subject matter: (1) the sale or other distribution of cigarettes to adults and minors; (2) the sale of cigarettes by vending machines; or (3) the sale of cigarettes to minors. The City agrees that section 308 concerns the sale of cigarettes to minors, but contends that, as used in subdivision (e), "subject matter" was intended to refer only to the provisions in section 308 which specify the punishment to be imposed upon those who violate the section.

Bravo's contention that section 308 is "a comprehensive solution to potential problems posed by cigarette vending machines" is absurd. In that lengthy section, vending machines are mentioned in but a single sentence, the sole purpose of which is to identify the person liable for violating the section when the sale to a minor occurs through a cigarette vending machine. To say that that sentence is the primary, or even a major, subject matter of the section is a gross distortion. As the Supreme Court has said, "[a] potentially preemptive 'field' of state regulation is 'an area of legislation which includes the subject of the local legislation, and is sufficiently logically related so that a court, or a local legislative body, can detect a patterned approach to the subject.'" (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 707-708 [209 Cal.Rptr. 682, 693 P.2d 261], quoting from *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 862 [76 Cal.Rptr. 642, 452 P.2d 930].) Section 308's solitary reference to vending machines does not constitute such a pattern of regulation.

Bravo's broader assertion—that the regulatory field which the Legislature intended to exclusively occupy through section 308 is the entire business of distributing cigarettes, to adults as well as to minors—is equally fantastic. The statute refers solely to sales to and purchases by minors. There is nothing in the statutory language which states, or even from which an inference may be reasonably drawn, that the subject matter includes sales of cigarettes to adults.

Bravo's attempts to support its interpretation with the legislative history of section 308 are unavailing. While a Senate Rules Committee report concerning Senate Bill No. 1960 does state that the bill "[s]et forth legislative intent to regulate the subject matter governing the distribution of tobacco products," that description must be read in the context of how the report characterized the subject of the bill as a whole: "SUBJECT: Minors: distribution of tobacco products." (Sen. Rules Com. Rep. on Sen. Bill No. 1960 as amended Aug. 17, 1988, p. 1.)

Moreover, Bravo's expansive interpretation of that isolated line from that report is inconsistent with other portions of the legislative history. For instance, the very next page of that same committee report, under the heading of "ANALYSIS," states that Senate Bill No. 1960 "specifies that it supersedes any local government ordinance or regulation pertaining to the sale of tobacco to minors." (Sen. Rules Com. Rep. on Sen. Bill No. 1960 as amended Aug. 17, 1988, *supra*, p. 2.) A report from the Legislative Analyst uses the identical language. (Legis. Analyst's Office, Analysis of Sen. Bill No. 1960 (1987-1988 Reg. Sess.) as amended Aug. 2, 1988, p. 1.)

Similarly, Bravo's reliance upon the Legislative Counsel's Digest of Senate Bill No. 1960 is misplaced. The title of that digest, to which Bravo cites, is simply: "Ch. 1045 (SB 1960) Petris. Distribution of tobacco products." (Legis. Counsel's Dig., Sen. Bill No. 1960, 4 Stats. 1988 (Reg. Sess.) Summary Dig., p. 336.) However, the text of the Legislative Counsel's analysis explains that the actual subject matter of the bill is not so broad. Specifically, the digest states that the then-existing version of section 308 specified that it was not to be construed to prohibit any local regulations of "the sale or display to persons under the age of 18 years of tobacco products." (At p. 336) The very next sentence contrasts that law with Senate Bill No. 1960: "This bill, instead, would set forth declarations of legislative intent to regulate the above subject matter governing the distribution of tobacco products . . . ." (*Ibid.*) The "above subject matter" to which that sentence refers appears to be "the sale or display to persons under the age of 18 years of tobacco products."

Turning to the City's interpretation, we reject its contention that the Legislature intended to limit the scope of its preemption solely to the

level of punishment to be imposed upon those who violate section 308. ██ ██ Such an intent is not reflected in either the text of that section or its legislative history.[11]

Contrary to the parties' interpretations, the text of section 308 clearly indicates that the subject matter of that section is the penal aspects of the sale of cigarettes to minors. Subdivision (a) of the section defines the sale of cigarettes to a minor as either a misdemeanor or a civil offense; describes how and by whom the offense is to be prosecuted; sets the amount of the

---

[11]The City supports its interpretation with two documents, neither of which is admissible legislative history.

First, the City cites to a letter from Senator Petris, which was approved for printing in the Senate Journal by a vote of the Senate, and which purports to clarify the intent of section 308, subdivision (e). It states that the intent of that subdivision "was not to preempt local governments from enacting legislation which further eliminates a minor's access to tobacco products. Rather, the preemption was meant only to apply to the fines" prescribed by the section, in order "to ensure statewide uniformity in relation to the fines for the sale of tobacco products to minors." (Letter of May 31, 1990, to Pres. Pro Tem. of Sen., Sen. J. (1989-1990 Reg. Sess.) p. 6129.)

The general rule is that, in construing a statute, we do not consider the motives or understandings of either its author or the individual legislators who voted for it. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371]; *California Teachers Assn.* v. *San Diego Community College Dist.*, supra, 28 Cal.3d at pp. 699-700.) However, a court may consider a letter explaining the author's intent in proposing a piece of legislation if the publication of the letter has been authorized by both houses of the Legislature to express the legislative intent. (*Bouquet, supra*, at 16 Cal.3d pp. 588-590.) The same might even be true when such a letter is published in the journal of only one of the two houses of the Legislature which adopted the legislation. (Cf. *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 51, fn. 2 [233 Cal.Rptr. 38, 729 P.2d 202].)

Here, however, the resolution authorizing the publication of the letter was not adopted by the same Legislature which approved the amendment to section 308 in 1988. Instead, that resolution was adopted in 1990, two years after the amendment to section 308, and thus after the composition of the Legislature had been altered by the intervening election. Therefore, a resolution adopted by the 1990 Legislature is not admissible to establish the intent of the 1988 Legislature when it amended section 308.

Nor is the letter admissible to establish the 1990 Legislature's intent concerning section 308. If a letter of legislative intent had been published by both houses of the 1990 Legislature, it can be considered for the intended construction of the statute from the date of publication forward. (Cf. *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 214 [187 P.2d 702].) However, while the record before us indicates that the letter was published by the Senate, it does not state that it was also adopted by the Assembly. We are aware of no authority which would permit one house of the Legislature to unilaterally establish the intent behind a piece of legislation on which it did not vote.

The same defect prevents the admission of the other evidence on which the City relies: Senate Bill No. 2912 of the 1989-1990 Regular Session. While that bill would have revised the preemption clause of section 308 to explicitly state that the only local regulation which it preempted was that concerning the amount of the penalties for violating section 308, that bill was passed only by the Senate, not by the Assembly. Since it was not adopted by both houses, it did not change the existing intent of section 308. Furthermore, since the Senate which adopted it was not the same Senate which approved Senate Bill No. 1960 in 1988, that adoption sheds no light on the 1988 Legislature's intent.

fines to be imposed upon those making the proscribed sales, and describes how those fines are to be divided; establishes a defense; and identifies the person liable in the event the proscribed sale is accomplished through a vending machine rather than in person. Subdivision (b) defines the purchase or receipt of cigarettes by a minor as an offense, and establishes the punishment to be imposed on offenders. Subdivision (c) attempts to discourage the commission of either offense by requiring that a copy of the section be posted by all cigarette sellers. Finally, subdivision (d) clarifies that second and subsequent offenses are to be determined on the basis of the business location involved, rather than the owner of the business.

In short, every provision of section 308 deals directly with the proscription, prosecution, or punishment of the sale or other distribution of cigarettes to, and the purchase or receipt of cigarettes by, minors. As discussed above, when viewed in its entirety, the legislative history does not indicate a broader preemptive intent. Accordingly, we conclude that the regulatory field preempted by section 308 is that of the penal—i.e., both criminally and civilly proscribed—aspects of the sale of cigarettes to minors: To whom is it illegal to sell cigarettes, and what are the penal consequences of doing so?

### b. *The Subject Matter of Chapter 5.24*

Section 308's express reservation of authority over the regulation of the penal aspects of the sale of cigarettes to minors preempts Chapter 5.24 only if that ordinance concerns that same subject matter. Thus, we turn to the definition of the subject matter of the local ordinance.

### (i) *Subject Matter of Text*

On its face, Chapter 5.24 covers two related subjects. First, it describes the class of persons who may sell cigarettes, by specifying that no one may sell cigarettes without a license. (Ch. 5.24, § 5.24.010.) Second, it describes the means by which cigarettes may be sold, by specifying that no one, licensed or unlicensed, may sell cigarettes through a vending machine. (Ch. 5.24, §§ 5.24.020, subd. B., and 5.24.030.)

Neither subject is touched on by section 308. The subject matter of Chapter 5.24 further differs from that of section 308 in that the ordinance does not establish a class of consumers to whom cigarettes may not be sold. While it specifies who may sell cigarettes, it is silent as to who may buy them. In particular, it does not draw any distinctions between adult consumers and those under 18. In short, the language of Chapter 5.24 indicates that it does not concern the same subject matter as section 308.

(ii) *Purpose Is Relevant to Subject Matter.*

However, in determining whether an ordinance regulates the same field of conduct (or, to use the phrasing of section 308, the same subject matter) as a state statute, a court must look, not only at the face of the ordinance, but also at the purpose for which the ordinance was enacted. (*Lancaster* v. *Municipal Court, supra,* 6 Cal.3d 805.)

At issue in *Lancaster* was a county ordinance which made it a misdemeanor for any person to massage any person of the opposite sex for remuneration. (6 Cal.3d at p. 807.) In determining whether that prohibition was preempted by state law, the court started by reaffirming its prior holding in *In re Lane* (1962) 58 Cal.2d 99, 103 [22 Cal.Rptr. 857, 372 P.2d 897], to the effect that the state had impliedly preempted the entire field of the criminal aspects of sexual activity. (*Lancaster, supra,* 6 Cal.3d at p. 808.)

Turning then to the question of whether the ordinance intruded into that same field, the court said: "There has been no suggestion of any reasonable purpose to the ordinance before us other than to limit sexual activity. Although it has been urged that the ordinance should be viewed as a regulation of the business of administering massages and not a sexual regulation, the only specification of any actual or potential evil is the sexual activity which may follow in the wake of the massage. The ordinance before us does not limit the persons who may give or receive massages or in any way regulate or limit the manner of administering a massage except to prohibit transsexual massage." (6 Cal.3d at p. 809.) The court then went on to consider items of legislative history, including letters to the board of supervisors from the county's administrative officer and sheriff, which indicated that the purpose of the ordinance was to regulate immoral conduct and to control prostitution. (*Id.,* at p. 809, fn. 2.) It concluded that the ordinance was a regulation of the criminal aspects of sexual conduct and thus was preempted. (*Id.,* at p. 809.)

This approach is consistent with the analysis employed when an ordinance is challenged on constitutional grounds other than preemption. When the purpose of a legislative enactment is relevant to a determination of its constitutional validity, the court may not ascertain that purpose by looking "exclusively to the operative language of the ordinance." (*Parr* v. *Municipal Court* (1971) 3 Cal.3d 861, 865 [92 Cal.Rptr. 153, 479 P.2d 353].) Instead, a court must consider both the immediate objective and the likely ultimate effect of the enactment's regulatory provisions. (*Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 533-534 [50 Cal.Rptr. 881, 413 P.2d 825].) The enactment must also be viewed in light of its historical context, such as the conditions

existing prior to its enactment and the events leading up to its enactment. (*Id.*, at p. 534; *Antonello* v. *City of San Diego* (1971) 16 Cal.App.3d 161, 166 [93 Cal.Rptr. 820] [evaluating, inter alia, claim that ordinance was preempted by state law].) For example, the court may resort to the history of the legislation, such as the statements of the legislative body during debate, " 'for the purpose of ascertaining the general object of the legislation proposed, and the mischiefs sought to be remedied.' " (*Parr, supra*, at p. 866.)

It would appear appropriate to use this same approach when determining whether a local ordinance has intruded into an area of regulation from which it has been excluded by the state. If the Legislature has indicated, either expressly or by implication, its intent to fully occupy a particular field, leaving "no room for supplementary or complementary local legislation" (*Lancaster, supra*, 6 Cal.3d at p. 808), then local entities should not be allowed to frustrate that intent by enforcing ordinances which have the purpose and effect of intruding into that restricted subject matter, but which are so carefully drafted as to avoid the appearance of doing so. A city should not be permitted to hide the preempted substance of a regulation behind its nonpreempted form.

### (iii) *The Purpose of Chapter 5.24*

To determine Chapter 5.24's purpose, objective, or evil to be remedied, Bravo requests that we take judicial notice of 25 separate items of legislative history. Those documents fall into three groups.

The first group includes city council agendas and minutes, plus reports to the city council from its city attorney, all chronicling the City's adoption in May of 1987 of its Ordinance No. 387, which prohibits smoking in most public places and places of employment. Also included are the city council agenda and minutes concerning the City's October 1988 adoption of its Ordinance No. 418, which effected minor changes to its ban on public smoking. Both ordinances were codified as chapter 8.30 of the City's municipal code.

The second group is comprised of the same types of documents concerning the City's adoption of Ordinance No. 488, the original version of the vending machine regulation, in December of 1990. Also included is a transcript of the public hearing at which that ordinance was given its first reading on November 15, 1990.

The third group is the agenda, staff report, and minutes concerning the adoption of Ordinance No. 502 on July 25, 1991, amending the vending

machine prohibition, together with the codification of that amendment into Chapter 5.24.

 ██ ██ The City concedes that all of these documents may be judicially noticed pursuant to Evidence Code section 452. Accordingly, Bravo's request as to those exhibits is granted.[12] However, the City does not agree that all of those documents may be considered in determining the subject matter of Chapter 5.24. ██ ██ In particular, the City contends that the documents concerning the adoption of Ordinance No. 488 are irrelevant, both (1) because Ordinance No. 488 was superseded in part by Ordinance No. 502, and (2) because the statements of legislators cannot be considered to determine the purpose of legislation on which they have voted. The City is mistaken on both counts.

 The fact that Chapter 5.24 has been amended since it was first enacted does not render the reasons for its initial enactment irrelevant. While we apply the law in its current form, we may draw on the legislative history of its earlier form for whatever light it may shed on the purpose of that legislative scheme as a whole. That is especially true when the particular language being challenged was enacted as part of the original legislation, not as a subsequent amendment.

 In contending that the statements made by the members of the City's city council during the public hearing on Ordinance No. 488 are irrelevant to a determination of the purpose of that ordinance, the City mistakenly relies on *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721 [119 Cal.Rptr. 631, 532 P.2d 495]. In that case, a taxpayer contended that a municipal employee salary ordinance was invalid because its adoption by the city had been coerced by the threat of an illegal strike by public employees. (*Id.*, at p. 723.) The taxpayer deposed the city council members who had voted for the ordinance, but they refused to answer questions concerning the reasons for their votes. (*Id.*, at p. 724.) The trial court ordered the deponents to answer the questions. (*Id.*, at pp. 724-725.)

In reversing the trial court, the Supreme Court first recited the "general rule that the validity of legislation does not turn on legislative motive," and that therefore "the mental processes of individual legislators become irrelevant to the judicial task; hence, we do not peer into these subjective realms." (*County of Los Angeles, supra,* 13 Cal.3d pp. 727-728.) It then held that, even

---

[12]The City did not consent to judicial notice being taken of one additional document, a newspaper article concerning the City's adoption of Ordinance No. 488. The contents of that article are not subject to judicial notice, and even if they were, they are merely duplicative of the transcript of the hearing which is already before us. Accordingly, as to that document, the request is denied.

assuming that one of the exceptions to that general rule was applicable, "the taxpayer still is not entitled to directly question the legislators as to their mental processes or their reasons for enacting the ordinance." (*Id.*, at p. 729.) The doctrine of the separation of powers makes it " 'simply unthinkable,' . . . 'that members of legislative majorities should from time to time be subject to cross-examination in various courts over the country regarding their state of mind when they voted.' " (*Id.*, at p. 731.)

However, when the purpose of legislation is relevant to its validity, "the refusal to permit direct inquiry into the subjective motivations of legislators does not insulate legislative [action] from effective review." (13 Cal.3d at pp. 730-731.) To the contrary, that purpose "can often be divined by examination of objective conduct rather than by the probing of subjective thoughts." (*Id.*, at p. 731, fn. 9.)

It is settled that one type of conduct which may be considered is statements made by legislators during debate on the proposed legislation. " 'The statements of [county] supervisors in debate on the passage of the ordinance . . . can be resorted to for the purpose of ascertaining the general object of the legislation proposed, and the mischiefs sought to be remedied.' " (*Parr* v. *Municipal Court, supra,* 3 Cal.3d at p. 866; accord, *Walters* v. *Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443] ["the transcript reveals the discussion and events at the hearing, aspects which we may properly consider"]; *California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d at pp. 699-700 [evidence of arguments presented, of legislative discussion, and of other events leading to adoption of legislation is admissible to interpret the legislation]; *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 590 [same].)

Therefore, the rule against inquiring into legislators' subjective motives does not prevent us from considering the transcript of the hearing at which Ordinance No. 488 was adopted. Nor does *Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 186 Cal.App.3d 814 [230 Cal.Rptr. 875], which the City cites for the same proposition. In interpreting a planning commission resolution, that court properly considered portions of declarations from the commissioners which described discussions and events leading to the adoption of the resolution, and refused to consider those portions which offered the declarants' opinions, understanding and interpretations of the resolution at issue. (*Id.*, at p. 828.) Similarly, the City's reliance on *No Oil, Inc.* v. *City of Los Angeles* (1987) 196 Cal.App.3d 223 [242 Cal.Rptr. 37] is misplaced. There, the court properly excluded a statement made by a city council member concerning the intent of legislation which had been adopted some years before the hearing at which the statement was made. (*Id.*, at pp. 247-248.)

On the other hand, *County of Santa Cruz* v. *City of Watsonville* (1985) 177 Cal.App.3d 831 [223 Cal.Rptr. 272] cites *County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d 721, for the proposition urged by the City, i.e., that statements made during the hearing on legislation are inadmissible to determine the meaning of the legislation. There, a city had adopted a redevelopment plan. Because the area covered by the plan extended into the county, the plan required the approval of the county's board of supervisors. Later, a dispute arose as to the number of redevelopment projects authorized by the plan. (*Id.*, at pp. 836-837.) The appellate court held that transcripts of statements made by the members of the board of supervisors when the plan came before the board for approval were inadmissible. (*Id.*, at pp. 842-843.) To the extent that those statements were being offered to construe the intent of the *city* in previously adopting the plan, we concur. However, to the extent that they were being offered to construe the *county's* intent in approving the plan, their exclusion was based upon an erroneous interpretation of *County of Los Angeles* which we decline to follow.

In summary, the legislative history will be considered to the extent that it reveals the arguments made, the legislative discussion concerning, and the events leading up to, the adoption and amendment of Chapter 5.24. All of the documents of which judicial notice has been taken fall into that category.

As noted above, Chapter 5.24 as presently constituted is the result of two separate ordinances, Nos. 488 and 502. In neither ordinance did the City include an express statement of purpose or finding of necessity. Accordingly, we examine the text and legislative history of both ordinances to determine their respective purpose.

That the City was targeting sales of cigarettes to minors when it enacted Ordinance No. 488 is clear. The sentence of the ordinance which prohibited sales of cigarettes by vending machines was immediately preceded by a sentence which provided that "[n]o person shall sell or give away any cigarette . . . to any person under the age of eighteen (18) years." Similarly, when the proposed ordinance was before the council for a first reading, the city attorney introduced the subject with the words, "You have before you an ordinance that will regulate, if adopted, the sale of cigarettes to minors." When one council member asked the city attorney why the ban on vending machines extended to areas from which minors were excluded, such as bars, he explained that the ban is all-inclusive because of the difficulty of defining the areas from which minors are excluded.

More particularly, however, the transcript of the hearing indicates that the ordinance was specifically intended to limit the access of minors to cigarettes. Of the five members of the public who addressed the council, four

argued in favor of adopting the ordinance on the ground that it would stop the otherwise unrestricted access that minors have to cigarettes purchased through vending machines. The City's council members, all five of whom voted to adopt the ordinance, appeared to have had the same purpose in mind. Of the five, three made statements on the record concerning the ordinance. All three cited the effect of the ordinance on the ability of minors to buy cigarettes as the motivating factor behind their votes.[13]

The purpose of Chapter 5.24 was further clarified by Ordinance No. 502. That amendment deleted the prohibition against sales of cigarettes to minors, eliminating any basis for contending that the City was intending to directly regulate the conduct proscribed by section 308.

We conclude that the purpose of Chapter 5.24 is to regulate the business of selling cigarettes in order to make illegal purchases of cigarettes by minors less likely by prohibiting the particular manner of sale most often used by minors.[14]

 c. *Do the Respective Subject Matters of Section 308 and Chapter 5.24 Overlap?*

■ Since the purpose of Chapter 5.24 is to discourage the violation of section 308 by banning cigarette vending machines from which illegal sales to minors frequently occur, does Chapter 5.24 impermissibly intrude into the field preempted by section 308? No. Case law establishes that an ordinance designed to discourage criminal acts is not necessarily preempted by the statute proscribing those acts.

*Lancaster, supra,* notes that the scope of a regulatory field preempted by the state does not extend to all possible municipal regulations: "The fact that

---

[13]Councilwoman Karr: "The ordinance appeals to me because it does go a long way to prevent children from just walking up and getting a pack of cigarettes, and I think we are probably 100% agreed that would solve that problem or it would certainly go toward solving that problem . . . ." Councilman Seman: "We have before us, done by our city attorney, an opportunity to make a strike at the cigarette industry, that is, we have an opportunity to say to the cigarette industry, you can't sell cigarettes to children to be, to make them become addicted to your product. So it's a very simple ordinance." Mayor Bleaman: "I think what we're doing is, number one, eliminating one easy opportunity for minors to get access to cigarettes and that, I think, is a positive state, positive, uh, move. The other positive aspect of it is I think it then begins to put all the merchants in the community on notice that they are responsible for their acts, and that is, there's a consequence to them not monitoring this requirement to not sell cigarettes to minors."

[14]The City's contention that the purpose of Chapter 5.24 was to supplement Ordinance Nos. 387 and 418, which ban smoking in most public places and places of employment, finds no support in the record. Nowhere are those ordinances or that ban mentioned in either the staff reports or the transcript of the public hearing.

the criminal aspects of sexual activity have been preempted by the state does not mean that counties may not collect license fees for the right to engage in lawful activities relating to sex." (6 Cal.3d at p. 809, citing *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132 [98 Cal.Rptr. 281, 490 P.2d 793].)

*Rivera* repeats the well-established rule that, "whether or not the state has occupied the field of regulation, cities may levy fees or taxes solely for revenue purposes . . . ." (6 Cal.3d at p. 139.) However, other cases explain that if a licensing scheme imposes not only license fees but also substantive regulations affecting fields covered by state law, those regulations may be preempted. (*The Pines* v. *City of Santa Monica* (1981) 29 Cal.3d 656, 662 [175 Cal.Rptr. 336, 630 P.2d 521]; *In re Groves* (1960) 54 Cal.2d 154, 157 [4 Cal.Rptr. 844, 351 P.2d 1028].)

This distinction between revenue ordinances and substantive regulations is not a dependable indicator of the validity of local regulations, because some substantive regulations may be construed to be outside of the preempted field. For instance, in *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179 [158 Cal.Rptr. 579], the city's ordinance not only required that a permit be obtained in order to operate a picture arcade, but also regulated how the arcade was to be operated, by prohibiting picture booths which were either partially or fully enclosed. (*Id.*, at p. 183.) Citing *Lancaster*, the arcade owners contended that the ordinance conflicted with the state's preemption of the criminal aspects of sexual activities. (*Id.*, at p. 191.)

The court rejected that contention, holding: "Unlike in *Lancaster* and *Lane*, this ordinance does not create a new standard of sexual conduct. Nor does it purport to criminalize sexual activity which is not criminal under state law. [¶] Plaintiffs contend that the testimony at the board of police commissioners' hearing prior to the adoption of the ordinance demonstrates that the purpose of this provision is to regulate sexual activity, particularly masturbation. We disagree. The purpose . . . is not to regulate lewd conduct (Pen. Code, § 647, subd. (a)), a matter preempted by state law. Rather, as the testimony shows, its purpose is to regulate the operation of picture arcades so that their operation does not invite or encourage violations of state law. Thus, the provision no more constitutes a regulation of sexual activity than does an ordinance requiring full lighting of streets. It is, therefore, a valid exercise of the city's police power which does not intrude upon a preempted field." (*EWAP, supra*, 97 Cal.App.3d at p. 191.)

At first glance, it seems difficult to reconcile *EWAP* with the rule that "[i]f the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation

. . . ." (*Lancaster, supra*, 6 Cal.3d at p. 808.) An ordinance designed to discourage masturbation is no less supplementary or complementary to the statutory prohibition of lewd conduct than is an ordinance which expressly forbids masturbation. *EWAP*, however, avoids that rule by deeming the regulations of the lawful business activities to be outside of the preempted field. The Supreme Court adopted the same analysis in *Cohen* v. *Board of Supervisors, supra*, 40 Cal.3d 277. At issue there was an ordinance requiring a municipal permit to operate an escort service. (*Id.*, at p. 284.) The ordinance also specified the manner in which the service was to operate, by requiring inter alia that it maintain a daily register containing the name and hours of employment of each employee, together with the name and address of each patron and the duration and location of and the fee charged for each service. (*Id.*, at p. 285.)

The ordinance was challenged on the basis that it was, like the ordinance in *Lancaster*, in substance a criminal statute intended to curb prostitution, and as such was preempted. (6 Cal.3d at p. 293.) The court disagreed, holding that even if the majority of escort services are merely fronts for prostitution (*id.*, at p. 297), the ordinance was not preempted because it "does not prohibit sexual or criminal activity or impose a sanction for engaging in it." (*Id.*, at p. 295.) It regulated the business of escort services, not the nature of the services provided by that business. (*Ibid.*)

The court said that a city's "right to utilize its licensing power as a means to regulate businesses conducted within its borders can scarcely be disputed," citing Business and Professions Code section 16000, Government Code section 37101, and the reference in *Lancaster* to license fees. (*Cohen, supra*, 40 Cal.3d at p. 296.) After quoting with approval from *EWAP* (*Id.*, at pp. 297-298), the court observed that frequently " 'the requirements which the state sees fit to impose [in a particular regulatory scheme] may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements.' [Citation.]

"For this reason, a local governmental body may properly determine that a particular business fosters, profits from and provides an environment for activities proscribed by state law. An ordinance is not transformed into a statute prohibiting crime simply because the city uses its licensing power to discourage illegitimate activities associated with certain businesses. Most licensing ordinances have a direct impact on the enforcement of state laws which have been enacted to preserve the health, safety and welfare of state and local citizens. This fact does not deprive a municipality of the power to enact them." (*Cohen*, 40 Cal.3d at pp. 298-299.)

Thus, *Cohen* stands for the proposition that, when the state has preempted the regulatory field regarding the criminal aspects of a particular activity, a local government may nevertheless impose substantive regulations concerning the manner of operation of a lawful business which facilitates violations of the state's prohibitory regulations so long as the ordinance (1) is intended to discourage the activity proscribed by state law and (2) does not attempt to either expand or reduce the degree to which the particular activity regulated by state law is criminally proscribed.[15]

Applying this rule to the facts before us, section 308 has preempted the regulatory field of the penal aspects of sales of cigarettes to minors. Chapter 5.24 neither expands nor attempts to limit the extent to which such sales are proscribed. Instead, it is intended to discourage violations of the statutory prohibition by regulating the manner in which cigarettes are made available for sale. Accordingly, we conclude that Chapter 5.24 is not preempted by section 308.

Bravo makes two responses to this analysis. First, it argues that because *EWAP* and *Cohen* are implied preemption cases, the rule derived from them has no application to this case, in which the preemption is express. It reasons that since there was no express statement of a legislative intent to preempt in those cases, the extent of the field which the Legislature intended to occupy was uncertain, and that uncertainty compelled the courts to define the field narrowly to avoid any unintended preemptive effect. Thus, the local regulation was held to be outside of that conservative estimation of the scope of the preempted field. Bravo argues that, by contrast, when the intent to preempt is expressly stated as in this case, there is no uncertainty, and thus the scope of the preempted field should be broadly defined.

We reject that alleged distinction. If the Legislature has indicated an intent to fully occupy a particular regulatory field, it should not make any difference whether that intent was communicated expressly or by implication. For instance, had the Legislature passed a statute which expressly stated that it intended to occupy the field of prostitution, the reasons cited in *Cohen* for upholding the validity of the escort service ordinance would be unaffected.

Moreover, the preemptive effect of a given statute is determined by deciding both whether a preemptive effect was intended, and if so, the scope

---

[15]*Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265 [132 Cal.Rptr. 365], relied upon by Bravo, is not inconsistent with this rule. There, the local legislation expanded upon state law regulating the criminal aspects of the distribution of harmful matter to minors by creating a proscription against the possession of such material for sale, an aspect of the distribution process which was not proscribed in the state law. (*Id.*, at p. 270.)

of the field of regulation which it was intended to occupy. An express statement of a legislative intent to preempt answers the first question, but does not necessarily remove the uncertainty regarding the answer to the second. In section 308, for instance, the intention to preempt local ordinances was expressly stated, but the scope of the regulated field was left undefined. Thus, a proposed distinction based upon certainty is fallacious.

 Bravo's second argument is based upon the rule that "a lawful business may not be destroyed under the guise of regulation." (*Antonello* v. *City of San Diego, supra,* 16 Cal.App.3d at p. 165.) Chapter 5.24 is not a valid regulation of the manner in which its business is conducted, Bravo argues, because the ordinance flatly prohibits the business from occurring at all. We disagree. The business being regulated by the ordinance is the business of selling cigarettes. Anyone engaged in that business is free to continue to do so, so long as they do so in a permissible manner, i.e., through a live salesperson as opposed to a machine.

CONCLUSION

Section 308 expressly preempts the regulatory field of the penal aspects of sales of cigarettes to minors. Chapter 5.24 regulates the business of selling cigarettes in an attempt to make violations of section 308 less likely. Under the rule of *Cohen* v. *Board of Supervisors, supra,* such local legislation does not intrude into the field of regulation occupied by section 308. Accordingly, section 308 does not preempt Chapter 5.24.

DISPOSITION

Since preemption is the sole reason advanced for the alleged invalidity of Chapter 5.24, the trial court's judgment that the ordinance is valid must be affirmed. Our order staying the enforcement of Chapter 5.24 is vacated.

Dabney, Acting P. J., and Timlin, J., concurred.