[No. S002096. Sept. 6, 1988.]

LONG BEACH POLICE OFFICERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
CITY OF LONG BEACH et al., Defendants and Respondents.

738

COUNSEL

Michael Hannon and Hannon, Park & Lennon for Plaintiffs and Appellants.

Mary Ann Healy and Stone & Healy as Amici Curiae on behalf of Plaintiffs and Appellants.

John R. Calhoun, City Attorney, Robert E. Shannon, Assistant City Attorney, and Bradford L. Andrews, Deputy City Attorney, for Defendants and Respondents.

Louise H. Renne, City Attorney (San Francisco), Dennis Aftergut, Burk E. Delventhal and Randy Riddle, Deputy City Attorneys, as Amici Curiae on behalf of Defendants and Respondents.

OPINION

KAUFMAN, J.—We granted review in this case to consider whether Government Code section 1126, which prohibits officers and employees of cities and other local agencies from engaging in collateral activities that conflict with their official duties, was intended to limit a local agency's power to impose restrictions on off-duty activities not specifically delineated in the statute, and if so whether the statute, as applied to a charter city, conflicts with the home rule provisions of article XI, section 5 of the California Constitution. We have concluded that section 1126 was not intended to preempt a local agency's authority to prohibit activities not enumerated in the statute. Accordingly, we need not reach, and therefore do not decide, the constitutional question.

## I. FACTS AND PROCEDURAL HISTORY

In March 1985, Russell Peterson, a police officer with the City of Long Beach Police Department (hereafter City or Department), submitted to the

Department a request to engage in off-duty employment as a civil process server for Long Beach Memorial Hospital. Although the chief of police initially approved Officer Peterson's request, the Department thereafter denied his application on the grounds that such off-duty activity conflicted with Department regulations and was incompatible with Officer Peterson's duties as a police officer.

Officer Peterson thereupon filed a grievance with the Department contending, inter alia, that its refusal to sanction his off-duty employment violated Government Code section 1126.[1] That provision, he argued, expressly limits the Department's power to regulate the off-duty employment of its officers and employees to the four specific categories of activities set forth in subdivision (b), subsections (1) through (4); his employment as a process server, he asserted, did not fall within any of the enumerated categories.

The City, in response, argued that section 1126 was not intended to preclude a local agency from proscribing additional or different off-duty

---

[1] Unless otherwise indicated, all statutory references are to the Government Code.

Section 1126 provides in full as follows: "(a) Except as provided in Sections 1128 and 1129, a local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions or responsibilities of his or her appointing power or the agency by which he or she is employed. Such officer or employee shall not perform any work, service or counsel for compensation outside of his or her local agency employment where any part of his or her efforts will be subject to approval by any other officer, employee, board or commission of his or her employing body, unless otherwise approved in the manner prescribed by subdivision (b).

"(b) Each appointing power may determine, subject to approval of the local agency, and consistent with provisions of Section 1128 where applicable, those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees. An employee's outside employment, activity or enterprise may be prohibited if it: (1) involves the use for private gain or advantage of his or her local agency time, facilities, equipment and supplies; or the badge, uniform, prestige or influence of his or her local agency office or employment or, (2) involves receipt or acceptance by the officer or employee of any money or other consideration from anyone other than his or her local agency for the performance of an act which the officer or employee, if not performing such act, would be required or expected to render in the regular course or hours of his or her local agency employment or as a part of his or her duties as a local agency officer or employee or, (3) involves the performance of an act in other than his or her capacity as a local agency officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit or enforcement of any other officer or employee or the agency by which he or she is employed, or (4) involves such time demands as would render performance of his or her duties as a local agency officer or employee less efficient.

"The local agency may adopt rules governing the application of this section. Such rules shall include provision for notice to employees of the determination of prohibited activities, of disciplinary action to be taken against employees for engaging in prohibited activities, and for appeal by employees from such a determination and from its application to an employee."

activities from those enumerated in the statute.[2] During the course of the grievance proceedings, the City agreed to permit Officer Peterson to serve civil process outside of the City limits, but steadfastly maintained that service of civil process within the City was incompatible with his duties as a peace officer and was subject to the control of the Department.

The hearing officer ruled that the Department had properly denied Officer Peterson's application for an off-duty work permit under the pertinent provisions of the City's personnel ordinance and the Department's manual of operations. Section 6.01 of the personnel ordinance provides that City employees who wish to engage in collateral employment must obtain the approval of their department head and the appointing authority, and section 6.02 of the ordinance prohibits any collateral employment by City employees "which is incompatible with the duties, functions, or responsibilities of the City, the appointing authority, the department, or the employee."

Pursuant to the personnel ordinance, the Department manual contains regulations governing off-duty employment by peace officers. These regulations require approval of any off-duty employment by the chief of police; limit such employment to 20 hours per week; and prohibit any outside employment which "in any way conflict[s] with the objectives of the Department . . . ."

The manual expressly prohibits two specific types of outside employment; section 3/112 prohibits employment in any establishment where the primary purpose is the selling or serving of alcoholic beverages; section 3/210.07 provides that employees *"shall not serve civil processes or assist in civil cases,* except as legally required, particularly those where they may be personally involved. *They shall avoid entering into civil disputes, particularly while performing their police duties,* but shall prevent or abate a breach of the peace or crime in such cases." (Italics added.)[3]

---

[2] Although the point might be arguable, the City implicitly conceded below, and expressly maintained at oral argument, that service of civil process did not fall within any of the four enumerated categories of activities set forth in subdivision (b), subsections (1) through (4) of section 1126.

[3] During the grievance proceeding, Officer Peterson argued that section 3/210.07 applied exclusively to officers acting in their official capacities in cases in which they were personally involved. The hearing officer implicitly ruled that the prohibition against service of civil process extended to off-duty employment as well, and applied regardless of whether the officer was personally involved in the civil matter. Officer Peterson did not challenge this construction of the Department regulation in his subsequent petition for writ of mandate and petition for review. Nor did he challenge the regulation on either procedural or substantive due process grounds. There is no contention made that Officer Peterson failed to receive adequate notice and a hearing, that the Department is somehow estopped from asserting the regulation,

Following the denial of his grievance, Office Peterson and the Long Beach Police Officers Association (hereafter referred to jointly as Association) filed a petition for writ of mandate, alleging that the off-duty activities enumerated in section 1126, subdivision (b) constitute the only permissible basis for denying a collateral employment permit. The trial court disagreed, finding that section 1126 did not preclude the Department from imposing restrictions on off-duty employment not specifically mentioned in the statute. The trial court also ruled that a construction limiting the City's authority would result in a violation of the home rule provisions of article XI, section 5 of the California Constitution.

The Court of Appeal reversed, holding that section 1126 limited the Department's authority over off-duty employment to the specified categories in the statute. The Court of Appeal further held that the regulation of collateral employment of peace officers constitutes a matter of statewide concern, rather than strictly a municipal affair, and therefore concluded that section 1126—as applied to a charter city such as Long Beach—does not violate the home rule provisions of article XI, section 5 of the California Constitution. We granted review to consider both facets of the Court of Appeal decision.

## II. Discussion

■■■ The central question before us is whether section 1126 was intended to exhaust or merely to illustrate the types of off-duty activities which may be subject to local-agency control. In the discussion which follows, we explore that issue first by focusing on the words of the statute themselves. Having concluded that the statutory language yields no plain and obvious meaning, we next examine certain extrinsic sources, including the legislative history of section 1126, the statutory context and contemporaneous administrative construction. In light of these extrinsic aids, we conclude that section 1126 was not intended to limit a local agency's authority to the activities enumerated therein.

### A. The Language of Section 1126

■■■ It is axiomatic that the fundamental goal of statutory construction is to ascertain the legislative intent, and that in determining such intent we look first to the words of the statute themselves. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; *Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590].)

---

or that the regulation bears no reasonable relation to a legitimate governmental objective. The sole question before us concerns the purpose and scope of section 1126.

■ Turning to the language of section 1126, we are confronted at the outset with a patent ambiguity. Subdivision (a) of section 1126 declares a sweeping prohibition against "any" activity or employment which is incompatible with the duties of a local agency officer or employee: "[A] local agency officer or employee shall not engage in *any* employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions or responsibilities of his or her appointing power or the agency by which he or she is employed." (Italics added.)

Commensurate with the broad proscription set forth in subdivision (a), the statute proceeds in subdivision (b) to confer seemingly plenary authority upon the local appointing power to define and proscribe those activities which are inconsistent with the duties and responsibilities of its officers and employees. The first sentence of subdivision (b) provides: "*Each appointing power may determine,* subject to approval of the local agency, and consistent with the provisions of Section 1128 where applicable, those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees." (Italics added.)

The second sentence of subdivision (b), however, signals a marked shift in emphasis from the first. Hard on the grant of seemingly plenary authority to the local agency to "determine . . . those activities which . . . are inconsistent" with the duties and responsibilities of its officers and employees, the statute enumerates four specific areas of activity which "may be prohibited."[4] Though each of the activities specified in subdivision (b), subsections (1) through (4) is defined in terms which are fairly broad, the parties agreed at trial that Officer Peterson's off-duty employment as a process server within the City of Long Beach did not fit within any of them.

The City argued, however, that the activities specified in subsections (1) through (4) were merely exemplary, and did not preclude the Department from imposing additional and different restrictions on the off-duty activities of its officers. The Association, apparently invoking the maxim *inclusio unius est exclusio alterius,* contended that the statute's enumeration of specific activities impliedly precluded the Department from proscribing any others.

As these differing interpretations suggest, it is not altogether self-evident whether the statute's specification of activities which "may be prohibited" was intended to be exclusive or merely exemplary. On the one hand, the Association suggests that the phrase should be interpreted as an affirmative

---

[4] These are set forth in full in footnote 1, *ante,* at page 739.

grant of limited powers, thus negating by implication any powers not specifically mentioned. (See *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195-196 [132 Cal.Rptr. 377, 553 P.2d 537]; *Martello* v. *Superior Court* (1927) 202 Cal. 400, 405 [261 P. 476].) The City, on the other hand, asserts that the phrase represents merely a legislative attempt to define certain *discretionary* criteria for the guidance of the local authorities, not an effort to preempt the field altogether. (See, e.g. *People* v. *Durbin* (1963) 218 Cal.App.2d 846, 849 [32 Cal.Rptr. 569] [" 'The ordinary meaning of "shall" or "must" is of mandatory effect, while the ordinary meaning of "may" is purely permissive in character.' "], quoting 27A Words and Phrases (permanent ed.) p. 674; see also *California Teachers Assn.* v. *Governing Board* (1977) 70 Cal.App.3d 833, 842 [139 Cal.Rptr. 155].)

Because the words of the statute themselves provide no definitive answer, it is appropriate to refer to extrinsic sources for evidence of legislative intent.[5] ■ " 'Where [statutory language] is susceptible of more than one meaning, it is the duty of the courts to accept that intended by the framers of the legislation, so far as its intention can be ascertained.' . . . To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny." (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].)

### B. *The Legislative History of Section 1126*

As concerns the statute's legislative history, both the Association and the City compare section 1126 with section 19251 (repealed and recodified as § 19990 in 1981 (Stats. 1981, ch. 230, § 55, p. 1168)), a parallel provision of the Government Code which regulates the off-duty employment of *state* officers and employees. As originally enacted in 1937 (Stats. 1937, ch. 753, § 203, p. 2110) and amended in 1949 (Stats. 1949, ch. 474, § 1, p. 822), section 19251 served as a model for section 1126 (enacted in 1971) and was almost identical in its terms.

Section 19251, however, differed from section 1126 in one key respect. With regard to the appointing power's authority to define incompatible activities, section 19251 provided as follows: "Each appointing power shall

---

[5] The Association suggests that any possible ambiguity is resolved by reference to the Legislative Counsel's Digest of section 1126. The digest, in pertinent part, describes the effect of the statute as follows: "Prohibits incompatible employment for compensation by officers and employees of local agencies . . . . Authorizes local agencies to determine outside activities of officers and employees that are incompatible to their duties . . . . Specifies prohibited activities . . . ." As is readily apparent, the digest simply mirrors the ambiguity inherent in the statute itself. Nothing in the digest indicates whether the Legislature intended the activities "specified" in subdivision (b), subsections (1) through (4), to be exhaustive or merely exemplary.

determine and prescribe, subject to approval of the board, those activities which, for employees under his jurisdiction, will be considered inconsistent, incompatible or in conflict with their duties as state officers or employees. In making this determination the appointing power *shall give consideration* to employment, activity or enterprise which . . . ." (See Stats. 1949, ch. 474, § 1, p. 823, italics added.) The statute then set forth the same categories of activities which were later incorporated into section 1126. In 1963, the operative language was amended to read: "*Consideration shall be given to* employment, activity or enterprise which . . . ." (Stats. 1963, ch. 1411, § 1, p. 2948, italics added.)

As the underscored language makes clear, section 19251 clearly was not designed to *limit* a state agency's power to proscribe incompatible activities of its officers and employees. The specification of activities in section 19251 (the categories were identical to those later set forth in section 1126) was intended solely for the "consideration" of the appointing power. The statute plainly permitted state agencies to prohibit incompatible collateral activities not specifically delineated in the statute.

In 1981, section 19251 was repealed and replaced by section 19990 (Stats. 1981, ch. 230, § 55, pp. 1166-1168), and in 1986 section 19990 was amended to read, in pertinent part, as follows: "Each appointing power shall determine, subject to approval of the department, those activities which, for employees under its jurisdiction, are inconsistent, incompatible or in conflict with their duties as state officers or employees. Activities and enterprises deemed to fall in these categories *shall include, but not be limited to,* all of the following . . . ." (Stats. 1986, ch. 1344, § 1, italics added.) Thus, the 1986 amendment leaves no doubt that the Legislature's intent was not to exhaust, but merely to illustrate, the kinds of off-duty activities which a state agency may deem to be incompatible with the official duties and responsibilities of its officers and employees.

The City argues that sections 1126 and 19251 clearly serve the same purpose—the deterrence of conflicts of interest between a public employee's official duties and his outside activities. ██ Statutes in pari materia should be construed together. (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 585 [146 Cal.Rptr. 859, 580 P.2d 274].) Therefore, the City contends, the Legislature must have intended that the activities enumerated in subsections (1) through (4) of section 1126, subdivision (b) would serve the same limited, illustrative function as those set forth in section 19251.

The Association compares section 1126 with section 19251 as well, but finds less significance in their common purpose than in the singular textual difference noted above. Relying on the principle that a material

change in the language of a legislative enactment is ordinarily viewed as showing an intent on the part of the Legislature to change the meaning of the statute (*Twin Lock, Inc.* v. *Superior Court* (1959) 52 Cal.2d 754, 761 [344 P.2d 788]), the Association contends that if the Legislature had intended subsections (1) through (4) to serve merely as nonexhaustive criteria, it would have employed the same unambiguous language as section 19251. (See *City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318] [" 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.' "].)

In fact, a review of the legislative history of section 1126 reveals that the original version of the statute contained language *identical* to that of section 19251. As introduced in the Senate, the original bill (Sen. Bill No. 220) provided in pertinent part as follows: "Prior to such determination, *consideration shall be given* to whether or not such employment, activity or enterprise . . . ." (Sen. Bill No. 220 (1971 Reg. Sess.) § 1.) Thus, the legislative intent underlying section 1126—at least in its original form—appears to have been identical to that of section 19251. That intent, as noted above, was merely to facilitate the performance of the legislative mandate by providing the administering agency with a nonexhaustive catalogue of discretionary criteria.

In due course, however, the original Senate Bill was referred to the Senate Committee on Local Government, where the phrase "consideration shall be given" was struck, and the following phrase inserted in its place: "An employee's outside employment, activity or enterprise *shall be prohibited* if it . . . ." (Sen. Amend. to Sen. Bill No. 220 (1971 Reg. Sess.) Apr. 26, 1971.)

The Senate committee gave no explanation for the change. The immediate effect of the amendment, however, was clear; the new language transformed the activities specified in subsections (1) through (4) from discretionary "considerations" into minimum standards. It was no longer sufficient for the local agency merely to "consider" the activities mentioned in the statute; the amendment provided that the specified activities *shall* be prohibited.

The amendment did not affect, however, the local agency's authority to proscribe collateral activities not specifically enumerated in the statute. The purpose of the amendment, in fact, appears to have been aimed at strengthening rather than diluting the bill; the amendment, in effect, set *minimum* standards to which local officers and employees were required to conform;

the local agency was left free to define additional or more stringent standards.

The Senate committee's amendment, however, proved to be short-lived. Following unanimous approval by the Senate as a whole, the amended bill went to the Assembly, where it was referred to the Local Governmental Organization Committee. There, it became apparent that the Assembly committee, unlike its Senate counterpart, opposed even the establishment of minimum standards. For the Assembly committee modified the amended Senate bill by striking the key word "shall" and inserting "may," so that the statute read: "An employee's outside employment, activity or enterprise *may* be prohibited if it . . . ." (Assem. Amend. to Sen. Bill No. 220 (1971 Reg. Sess.) May 24, 1971.) The Senate subsequently ratified the Assembly's amendments, and the bill was enacted in essentially the form we find it today.

Thus, the bill had come full circle. Though the language of the final draft ultimately differed from the text of the statute (§ 19251) on which it was originally modeled, the effect remained the same; subsections (1) through (4) were to serve as discretionary legislative criteria to guide the local agency in its efforts to accomplish the legislative mandate of eliminating conflicting influences on local public officials. The local agency was left free to set standards different from or more rigorous than those suggested in the statute.

The legislative history of section 1126, subdivision (b) persuasively demonstrates that the statute's specification of activities which "may be prohibited" was intended to guide, not to confine the local agency's exercise of authority. Local agencies retain discretion to proscribe incompatible employments not specifically delineated in the statute.

### C. *Other Indicia of Legislative Intent*

The foregoing conclusion is supported not only by the legislative history of section 1126, but also by well-settled principles of statutory construction.

█ The words of a statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must, to the extent possible, be harmonized, both internally and with each other. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) █ Construed as an enumeration of legislative guidelines rather than as an exhaustive catalogue of local agency powers, it is clear that subsections (1) through (4) harmonize more fully with the unqualified prohibition against "any" incompatible outside employment contained in subdivision (a) of section 1126.

Such a construction also harmonizes more completely with the otherwise unqualified grant of plenary authority to local agencies, set forth in the first sentence of subdivision (b) of the statute.

Furthermore, as earlier noted, such a construction serves to harmonize section 1126 with section 19990 (former § 19251), the parallel provision of the code governing the off-duty activities of state officers and employees. The Association has made no attempt to explain why a local agency's discretion to proscribe incompatible off-duty activities of its officers and employees should be any less flexible than that of a state agency. Common sense dictates that the two sections, addressed to a common concern, should be accorded a similar scope.

The Association contends that a contrary construction of section 1126 is necessary to harmonize the statute with section 1127, a related provision which underscores the Legislature's intent not to forbid entirely all collateral employment by local agency officers and employees.[6] On the contrary, section 1127 substantially reinforces the provisions of section 1126 by providing that such collateral employment must be "compatible" with the employee's public duties, and must have the "approval" of the employee's agency supervisor.

Finally, it is noteworthy that the construction of section 1126 which we adopt is consistent with numerous opinions of the Attorney General. ■ Though clearly not controlling authority, the opinions of the Attorney General are accorded great respect by the courts. (*Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24, 30 [219 Cal.Rptr. 133, 707 P.2d 195]; *Wenke* v. *Hitchcock* (1972) 6 Cal.3d 746, 751-752 [100 Cal.Rptr. 290, 493 P.2d 1154].) ■ A review of numerous advisory opinions rendered over the 25 years section 1126 has been in effect reveals a consistent application of the statute to *any* factual situation involving a potential conflict of loyalties, whether or not specifically enumerated in subsections (1) through (4). (See, e.g. 58 Ops.Cal.Atty.Gen. 109 (1975) [§ 1126, subd. (b) doctrine of incompatibility applies to a member of a school board concurrently serving as a member of a city personnel board]; 63 Ops.Cal.Atty.Gen. 868 (1980) [county assessor may determine, pursuant to § 1126, subd. (b), that employee's purchase of land at tax-deeded land sale within the county is incompatible with his duties as an appraiser in the assessor's office]; 68

---

[6]Section 1127 provides: "It is not the intent of this article to prevent the employment by private business of a public employee, such as a peace officer, fireman, forestry service employee, among other public employees, who is off duty to do work related to and compatible with his regular employment, or past employment, provided the person or persons to be employed have the approval of their agency supervisor and are certified as qualified by the appropriate agency."

Ops.Cal.Atty.Gen. 175 (1985) [pursuant to § 1126, subd. (b), city police department may determine whether police chief may undertake to contract with private parties to provide private security services by off-duty police officers for a fee]; 70 Ops.Cal.Atty.Gen. 157 (1987) [school board may determine, pursuant to § 1126, subd. (b), that board member's operation for profit of a private preschool facility conflicts with his duties as a member of the board].)

Thus, the legislative history, the statutory scheme and the administrative construction of section 1126 all compel the conclusion that section 1126 was not intended to restrict the Department's authority over the off-duty employment of its officers to the activities enumerated therein.

## CONCLUSION

For all of the foregoing reasons, we conclude that the trial court's judgment denying a petition for writ of mandate was correct. The judgment of the Court of Appeal is reversed. Each party shall bear its own costs on appeal.

Mosk, J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Stone (Steven J.), J.,* concurred.

---

* Presiding Justice, Court of Appeal, Second Appellate District, Division Six, assigned by the Chairperson of the Judicial Council.