TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 98-1107 |
| of | : | May 11, 1999 |
| BILL LOCKYER<br>Attorney General | : |  |
| ANTHONY M. SUMMERS<br>Deputy Attorney General | : |  |

THE HONORABLE DEBORAH V. ORTIZ, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

May the Community College Foundation enter into an agreement with a state agency to provide part-time employment for students attending a public or private institution of higher education?

CONCLUSION

The Community College Foundation may enter into an agreement with a state agency to provide part-time employment for students attending any public or private institution of higher education with which the Foundation is affiliated.

ANALYSIS

Government Code section 19133[1] provides:

"(a) Any state agency may enter into an agreement with any public or private institution of higher education in California, nonprofit campus foundation, or state higher education foundation to provide part-time employment to students attending a public or private institution of higher education that contracts with the state agency, or to students attending a public or private institution which is affiliated with a nonprofit campus foundation, or a state higher education foundation, that contracts with a state agency, in work related to the field of study of the student.

"(b) Notwithstanding any other provision of law to the contrary, no student employed pursuant to this section shall do any of the following:

"(1) Accrue state civil service status.

"(2) Be employed for more than 194 days in the 365 days following the initial date of employment.

"(3) Cause the displacement of civil service employees.

"(c) 'Displacement,' for purposes of this section, includes layoffs, demotions, involuntary transfers to a new class, involuntary transfers to a new location requiring a change of residence, and time-based reductions. 'Displacement,' for purposes of this section, shall not include changes in shifts or days off nor shall it include reassignment to other positions within the same class and general location."

We are asked whether the Community College Foundation ("Foundation") may enter into an agreement with a state agency to provide part-time employment for students under the terms of section 19133. We conclude that it may under specified circumstances.

The Foundation is a not-for-profit corporation, the assets of which are held in trust for purposes related to education at the community college level. It is a charitable trust registered with the State of California, and its officers and directors are located within the

[1] Further references to the Government Code will be by section number only.

98-1107

state. Prior to November 13, 1997, the Foundation was known as the California Community College Foundation. (See 73 Ops.Cal.Atty.Gen. 95, 96 (1990).)

In analyzing the language of section 19133, we apply well established principles of statutory construction. "To interpret statutory language, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632.) "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" (*People* v. *Valladoli* (1996) 13 Cal.4th 590, 597.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.) " '[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' " (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387; accord, *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 743; *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570.)

Examining first the legislative history of section 19133, we note that the statute was enacted in 1989. (Stats. 1989, ch. 168, § 2.) The purposes of the statute were expressed by the Legislature as follows:

"The Legislature hereby finds and declares that it is the policy of the State of California to do all of the following:

"(a) To provide coordinated work-study experiences to the postsecondary education students of California.

"(b) To have students provide services to the state departments in a manner consistent with short-term departmental needs.

"(c) To provide student employment opportunities to minority, female, and disabled students in career fields where they have been traditionally underrepresented." (Stats. 1989, ch. 168, § 1.)

At the time section 19133 was enacted, the "wider historical circumstances" indicate that state higher education foundations affiliated with public and private colleges and universities

were in existence to support the educational opportunities of students. For example, in 1983 the Board of Governors of the California Community Colleges helped to create the California Community Colleges Foundation, which was required under its articles of incorporation and by-laws "to assist the Board of Governors of the California Community Colleges in communicating information to the general public about the educational programs of California's public community colleges, and to facilitate communication and consideration between the Board of Governors and California's public community colleges." Such a foundation, affiliated with the Board of Governors of the California Community Colleges, would be able to accomplish the purpose of providing "coordinated work-study experiences to . . . students . . . ." (Stats. 1989, ch. 168, § 1.) We believe that the Legislature had in mind this type of "state higher education foundation" when it enacted section 19133.

On the other hand, if a foundation does not have an affiliation with a college or university, a coordinated work-study program for the students would be questionable. Moreover, subdivision (a) of section 19133 specifies that the work is to be "related to the field of study of the student." Again, this requirement calls for some measure of supervision by the particular college or university.

Requiring a state higher education foundation to be affiliated with the college or university which the students are attending ensures that the work-study program will be "coordinated," as it would be if the college or university itself contracted with the state agency or if a campus foundation so contracted. We view these situations in a similar light, carrying out the Legislature's goal of a coordinated work-study program. Section 19133's provisions may thus be harmonized.

We find support for our conclusion in section 19133's reference to "students attending a public or private institution which is affiliated with a non-profit campus foundation, or a state higher education foundation." This phrase was added to the proposed legislation when Assembly Bill No. 420 was amended at the request of the Chancellor's Office of the California State University. The original sponsor of the legislation, the State Personnel Board, in its analysis of the amendment dated June 22, 1989, commented:

> "The amendment to AB 420 was proposed by the Chancellor's Office of the California State University (CSU). Its purpose is to prevent organizations other than CSU organizations from placing CSU students in contracted student assistant jobs with the State. The rationale is that CSU organizations are the only ones in a position to match student assistant job opportunities for CSU students with the needs and academic programs of those students."

A similar comment was made in the analysis of the amendment prepared by the Health and Welfare Agency dated June 15, 1989:

"This amendment specifies that state agencies may provide employment to students attending a public or private institution which is affiliated with a non-profit campus foundation or a state higher education foundation."

It is apparent from this legislative history that the Legislature intended a "state higher education foundation" to be affiliated with a public or private college or university where the students are attending in order to contract with a state agency under the terms of section 19133. However, the Legislature has not defined the word "affiliated" for purposes of the statute. When enacting section 19133, the Legislature did not require, for example, a state higher education foundation to be an "auxiliary organization" as defined in Education Code section 72670. We view the word "affiliated" in its ordinary sense as referring to a close relationship, an association, or an organized connection. (See Webster's Third New International Dictionary (1971) p. 35.) Accordingly, we believe that any agreement, contract, or formal working arrangement connecting or associating the Foundation with a college for purposes of the employment program will satisfy the "affiliated" requirement with respect to the students attending such college. What is required is that the agreement establish the college's participation with the Foundation in presenting a coordinated work-study program in each student's field of study.

In summary, section 19133 authorizes state agencies to contract with (1) a public institution of higher education regarding the employment of students attending the institution, (2) a private institution of higher education regarding the employment of students attending the institution, (3) a nonprofit campus foundation regarding the employment of students attending a public or private institution affiliated with the foundation, and (4) a state higher education foundation regarding the employment of students attending a public or private institution affiliated with the foundation. In each of these cases, the participation of the institution will ensure that the objectives of the legislative program are met.

We conclude that the Foundation may enter into an agreement with a state agency to provide part-time employment for students attending any public or private institution of higher education with which the Foundation is affiliated.

* * * * *