Filed 2/8/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| ALVIN DOE et al.,<br><br>       Plaintiffs and Appellants,<br><br>       v.<br><br>XAVIER BECERRA, as Attorney General, etc., et al.,<br><br>       Defendants and Respondents. | C081994<br><br>(Super. Ct. No.<br>34201400163821CUCOGDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Reversed with directions.

Benbrook Law Group, Bradley A. Benbrook and Stephen M. Duvernay for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Marc A. LeForestier, Acting Senior Assistant Attorney General, Stepan A. Haytayan and Jeffrey A. Rich, Deputy Attorneys General, for Defendants and Respondents.

1

This case involves a challenge to the California Department of Justice's (DOJ) policy that individuals who possess a federal license to collect "curio and relic" firearms cannot, by virtue of possessing that license, purchase more than one non-curio or relic handgun in a 30-day period. DOJ's position is based on an interpretation of Penal Code section 27535,[1] which both limits the number of handguns that can be purchased in a 30-day period and exempts individuals with the federal collector's license (and a certificate of eligibility from DOJ) from that limit. DOJ announced the disputed position in a 2014 letter to California firearms dealers.

DOJ's position was challenged by two licensed firearms collectors, who alleged DOJ failed to comply with the Administrative Procedures Act (APA) (Gov. Code, § 11340 et seq.) in adopting this policy, and also sought a declaration of rights. The trial court granted defendants and respondents Attorney General Xavier Becerra and Chief of the Bureau of Firearms Stephen J. Lindley's motion for summary judgment and denied plaintiffs and appellants Alvin Doe and Paul A. Gladden's cross-motion for summary judgment on plaintiffs' complaint for declaratory relief. The trial court ruled that DOJ's position embodied the only legally tenable interpretation of section 27535.

On appeal, plaintiffs argue the interpretation DOJ announced in 2014 is void because (1) it is inconsistent with section 27535 and (2) it was not adopted in compliance with the APA. We agree with plaintiffs and address their arguments in reverse order. Regarding their second argument, we conclude DOJ's policy is not exempt from being promulgated under the APA because it does not embody "the only legally tenable interpretation" of the statute. (Gov. Code, § 11340.9, subd. (f).) Having decided that DOJ's 2014 interpretation of section 27535 is void for failure to comply with the APA, we resolve any ambiguity regarding the proper construction of the statute and construe it

---

[1] Undesignated statutory references are to the Penal Code.

as allowing individuals with the designated federal license, and certificate of eligibility, to purchase more than one handgun within 30 days regardless of the type of handgun being purchased. In doing so, we agree with plaintiffs' first argument as well. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Section 27535 contains both a limitation on the number of handguns that can be purchased in a 30-day period and several exceptions from that limit. The statute provides, in relevant part:

"(a) No person shall make an application to purchase more than one handgun within any 30-day period.

"(b) Subdivision (a) shall not apply to any of the following:

"[¶] . . .[¶]

"(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2." As we discuss in more detail below, a person who is licensed as a collector under title 18 United States Code section 921 and the regulations issued pursuant thereto holds the aforementioned federal license to collect "curio and relic" firearms.

In 2005, the deputy attorney general who was representing what was then called the Firearms Division, responded by email to an inquiry from a licensed collector regarding an earlier version of section 27535, subdivision (b)(9). The deputy attorney general explained, "I have been advised that it is our long-standing policy for DOJ to exempt all firearms purchases by [curio and relic] licensees from the provisions of [former section] 12072[, subdivision](a)(9)(A) [the 'one gun per month' limit], even if the firearms are not curios and relics."

3

On May 8, 2014, Chief Lindley sent a letter to California firearms dealers regarding the licensed collector exemption that took a decidedly different position.[2]  The letter relied on federal regulations referenced by the statutory exemption and explained, "it is clear that federal law does not permit the licensee to use the curio and relic license in transactions other than those involving curio and relic firearms, nor grants them any other special status over a non-licensee when the transaction involves non-curio and relic firearms.  These provisions of federal law are specifically referenced in . . . section 27535, subdivision (b)(9).  [¶]  Therefore, the exemption provided in . . . section 27535, subdivision (b)(9), shall not be used for the sale of any handguns other than those defined as curio and relics under federal law, and any such transaction shall be discontinued immediately.  Any transactions violating California or federal law that are not canceled by the dealer will be canceled by the California Department of Justice, Bureau of Firearms."  Prior to announcing this policy, DOJ did not follow the rulemaking procedures set forth in the APA.

Plaintiffs, who are licensed collectors under federal law and have current certificates of eligibility issued by DOJ, subsequently filed a complaint stating two causes of action for declaratory relief.  The first cause of action alleges a controversy between plaintiffs and defendants regarding the interpretation of section 27535 and whether it only exempts purchases involving curios or relics.[3]  The second cause of action seeks a judicial declaration that DOJ's enforcement policy regarding section 27535 is invalid because it was adopted without complying with the APA.

---

[2]  In keeping with the language of the statute, we refer to the exception set forth in section 27535, subdivision (b)(9) as the licensed collector exemption.  To define it as a "curio and relic exemption," as defendants do and the trial court did is to presuppose the answer to the question before us.

[3]  In their briefing, plaintiffs assert the first cause of action alleges that the policy is void because it is inconsistent with section 27535.

4

The parties filed cross-motions for summary judgment on plaintiffs' complaint and stipulated to the relevant facts. The trial court granted defendants' motion and denied plaintiffs' motion.

The trial court held the plain meaning of section 27535, subdivision (b)(9) "recognizes that [curio and relic] licenses relate to the purchase of curios and relics" and the exemption therefore "extends only to curios and relics." The trial court determined the legislative history of a prior unpassed bill, that suggested a different conclusion, had no bearing on the interpretation of section 27535, and the legislative history of section 27535 itself "simply indicate[s] that 'licensed collectors' are exempt from the rule, but in no way indicate[s] that they are exempt from the rule for anything other than curios and relics." The trial court emphasized section 27535 "was enacted to curtail the illegal gun market, disarm criminals and save lives by preventing multiple purchases of handguns, **even through legitimate channels**. [Citation.] Such history does not reflect a goal of permitting collectors of curios and relics to purchase an unlimited number of modern handguns."

The 2005 email did not alter the trial court's decision: "[T]here is no showing how [the deputy attorney general] was 'advised' of any such policy. There simply is no showing that the DOJ has reversed course on a long standing policy such that the position set forth in the 2014 [letter] is not entitled to deference." The court determined the letter was entitled to significant deference because DOJ has expertise in enforcement of firearms laws, but the deference accorded in this situation "is at most a minor issue given the Court has found that the . . . [e]xemption in [section] 27535 can only be interpreted in the manner urged by Defendants." Indeed, the court held DOJ was not required to comply with the APA because its construction of section 27535, subdivision (b)(9) was the only "legally tenable" interpretation: "[T]he Court finds that the . . . [e]xemption 'can reasonably be read only one way[,'] that is to apply only to curios and relics."

The trial court entered judgment accordingly, and plaintiffs timely appealed.

5

## II.  DISCUSSION

*A.*     *Standard of Review*

The trial court's resolution of the cross-motions for summary judgment and the underlying statutory construction issue is subject to our de novo review because it raises pure questions of law.  (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.)

*B.*     *Compliance with the APA*

The APA sets forth procedures for the adoption of an administrative regulation and provides that a failure to follow them voids the agency action.  (Gov. Code, § 11340.5, subd. (a); *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 572.)  The APA defines "regulation" broadly to include "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure."  (Gov. Code, § 11342.600.)

Defendants contend the APA's procedural requirements do not apply because their policy "embodies the only legally tenable interpretation of a provision of law."  (Gov. Code, § 11340.9, subd. (f).)  "This exception codifies the principle that '[i]f certain policies and procedures . . . are . . . "essentially [ ] a reiteration of the extensive statutory scheme which the Legislature has established" . . . then there is obviously no duty . . . to enact regulations to cover such reiterations, since the sixth commandment of "nonduplication" prescribes "that a regulation does not serve the same purpose as a state . . . statute. . . ."  [Citation.]  But to the extent any of the contents of the [statement of policy or procedure] depart from, or embellish upon, express statutory authorization and language, the [agency] will need to promulgate regulations.' "  (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 336 (*Morning Star*).)  "[T]he exception for the lone 'legally tenable' reading of the law applies only in situations where the law 'can

6

reasonably be read only one way' [citation], such that the agency's actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language." (*Id.* at pp. 336-337.)

"To evaluate this argument, we consider, as with conventional statutory interpretation, the language and purpose of the relevant statutes in order to discern the Legislature's intent." (*Morning Star, supra,* 38 Cal.4th at p. 336.) "[W]hether the Department has adopted the sole 'legally tenable' reading of the statutes represents a different question than whether its interpretation is ultimately correct." (*Ibid.*)[4]

As set forth above, the relevant statutory provision provides an exemption from the prohibition on purchasing more than one handgun in a 30-day period for "[a]ny person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice." (§ 27535, subd. (b)(9).) The federal statute referenced by the exemption, title 18 United States Code section 921, authorizes the United States Attorney General to promulgate regulations defining who is a licensed collector: "The term 'collector' means any person who acquires, holds, or disposes of firearms as curios or relics, as the Attorney General shall by regulation define, and the term 'licensed collector' means any such person licensed under the provisions of this chapter." (18 U.S.C. § 921(a)(13).) Generally, curios and relics are "[f]irearms which are of special interest to collectors by reason of some quality other than is associated with firearms intended for sporting use or as

---

[4] We agree with the trial court that whether the letter's interpretation of the licensed collector exemption is the only "legally tenable" one is a separate question from whether the Bureau of Firearms has always adhered to it. It is not impossible to imagine that an agency would apply (or not apply) a statute in a way that was contrary to its only legally tenable interpretation.

offensive or defensive weapons." (27 C.F.R. § 478.11.)[5] Federal regulations also state, "[t]he collector license provided by this part shall apply only to transactions related to a collector's activity in acquiring, holding or disposing of curios and relics." (27 C.F.R. § 478.41(d).) Defendants contend the meaning of the licensed collector exemption can be ascertained from its plain language and the plain language of the referenced federal laws. Even if the correct interpretation can be ascertained in this manner, it "hardly represents the sort of rote or ministerial application of a statute that we believe the Legislature had in mind when enacting an APA exception for the sole 'legally tenable' interpretation of the law." (*Morning Star, supra,* 38 Cal.4th at pp. 338-339 [describing the complicated tasks of tracing each of the statutory cross-references].)

The letter from Chief Lindley concludes that a prospective purchaser does not qualify for the licensed collector exemption if his or her license does not apply to the transaction in question. But section 27535, subdivision (b)(9), is easily susceptible to the interpretation that it applies whenever a purchaser is properly licensed under federal law and eligible under state law as a general matter. In fact, the literal interpretation of the licensed collector exemption when read in conjunction with the applicable federal law appears to be that despite the limited utility of the collector's license during the purchase of a regular handgun, the purchaser remains "licensed" as a collector under federal law. Stated differently, while the license does not apply to a transaction that does not involve a curio or relic, the license is not invalidated by such a transaction. (27 C.F.R. § 478.41(d).) Defendants acknowledge that it is possible to read the licensed collector exemption to apply to the purchase of any handgun when they state "it appears that a literal interpretation of [the] statute may lead to absurd results."

---

[5] For a firearm to be recognized as a curio or relic, additional requirements apply. (27 C.F.R. § 478.11.)

Defendants rely upon the following description of the law's intent taken from the Assembly Committee on Public Safety's analysis of the bill that originally codified the licensed collector exception to support their interpretation (Assembly Bill No. 202 (1999-2000 Reg. Sess.) (AB 202)):[6]

"1) Author's Statement. According to the author, 'There is no limit on the number of handguns that may be purchased from a dealer. This makes it easy for straw purchasers to acquire guns for another person or for street dealers to acquire guns legitimately. Handguns make up an overwhelming share of crime guns and a significant number are traceable to dealer transactions. AB 202 will curtail the illegal gun market, disarm criminals, and save lives by preventing multiple purchases of handguns through legitimate channels. Preventing multiple purchases takes the profit out of black market sales and puts gun traffickers and straw purchasers out of business.'

"2) Limiting Bulk Purchases to Cut Down on Straw Transactions. The goal of this bill is to stop one gun purchaser from buying several firearms and transferring a firearm to another person who does not have the legal ability to buy a gun him/herself. Such a transfer is referred to as a 'straw transaction.' Typically, straw transactions involve a third party who is under 21 years of age, has a disqualifying prior conviction, has a mental disorder, or is not a resident." (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 202 (1999-2000 Reg. Sess.) as amended Mar. 10, 1999, pp. 3-4.)

---

[6] As enacted, AB 202 amended former section 12072 to add subdivision (a)(9)(A), which provided that "[n]o person shall make an application to purchase more than one pistol, revolver, or other firearm capable of being concealed upon the person within any 30-day period." (Stats. 1999, ch. 128, § 2.) AB 202 also added former section 12072, subdivision (a)(9)(B)(x), to exempt "[a]ny person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto and who has a current certificate of eligibility issued to him or her by the Department of Justice pursuant to Section 12071." (Stats. 1999, ch. 128, § 2.) As the result of statutory reorganization, this portion of former section 12072 is now codified at section 27535. (Stats. 2010, ch. 711, § 6.)

9

While this description of legislative intent is potentially useful in interpreting the statute, "these materials simply do not categorically rule out alternative interpretations of the pertinent law." (*Morning Star, supra,* 38 Cal.4th at p. 339.) "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." (*Rodriguez v. United States* (1987) 480 U.S. 522, 525-526 (*per curiam*); accord *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 48.) In fact, section 27535 contains 13 different exceptions to the general purpose of preventing the purchase of multiple handguns. These exemptions cover persons ranging from law enforcement agencies to entertainment production companies. (§ 27535, subd. (b).) Interestingly, the legislative history defendants cite also discusses whether these exemptions effectively gut the bill.[7] (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 202 (1999-2000 Reg. Sess.) as amended Mar. 10, 1999, pp. 4-5.) And as plaintiffs note, the exemption at issue in this case is described in the legislative history as applying to collectors without any indication of a further limitation on the type of handguns that may be purchased: "Those exempt institutions, persons and situations include: [¶] . . . [¶] j) Any licensed collector." (*Ibid.*) Defendants have "not established that [their] interpretation follows directly and inescapably from the pertinent provisions of law." (*Morning Star, supra,* at p. 340.) As such, the exception to the rulemaking provisions of the APA set forth in Government Code section 11340.9,

---

[7] This legislative analysis concludes the exemptions do not gut the bill because they "are salutary because they encourage a person who may be involved lawfully in multi-gun exchanges to go to a licensed dealer, or to the local sheriff, in order to facilitate the exchange." (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 202 (1999-2000 Reg. Sess.) as amended Mar. 10, 1999, p. 4.) And "[d]espite the exemptions, the bill still hinders bulk purchase straw transactions by limiting applications for concealable firearms to one application per 30-day period." (*Ibid.*)

subdivision (f), governing statutes with only one possible interpretation, does not apply and the policy reflected in the 2014 letter from Chief Lindley is invalid. (*Morning Star, supra,* at p. 340.)

## C. Application of the Licensed Collector Exemption

"[A]lthough the court must void an interpretive regulation that does not comply with the APA procedures, it may resolve the ambiguity that gave rise to the agency interpretation if it is not required to defer to the agency construction." (*Capen v. Shewry* (2007) 155 Cal.App.4th 378, 391.) We conclude we are in as good a position as DOJ to interpret the statutory language and, accordingly, we exercise our authority to address the proper construction of section 27535 in order to resolve plaintiffs' claim that DOJ's interpretation is inconsistent with statute. (See *Capen v. Shewry, supra,* at p. 383.)

While the trial court correctly observed that DOJ has expertise in the enforcement of firearms laws, the interpretation of section 27535, subdivision (b)(9) does not call upon this administrative expertise. The question in this case is whether a person "is licensed" if they have a valid federal license, but that license cannot be used for the transaction in question. As to this particular question of statutory interpretation there is no reason to believe the Bureau of Firearms has " 'a comparative interpretive advantage over the courts.' " (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.)[8] For this reason, we resolve the question of how to properly interpret section 27535 without deferring to DOJ's administrative interpretation.

---

[8] "[E]vidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' . . . , and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted," are factors to consider in determining whether an agency's interpretation is probably correct. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 13.) Thus, contrary to the trial court's suggestion, the 2005 email is relevant to those factors because it suggests the interpretation in the 2014 letter from Chief Lindley was neither long-standing nor contemporaneous with the enactment of AB 202. But, in this case, the

11

Where, as here, "the words of the statute themselves provide no definitive answer, it is appropriate to refer to extrinsic sources for evidence of legislative intent." (*Long Beach Police Officers Assn. v. City of Long Beach* (1988) 46 Cal.3d 736, 743.) We look to the legislative history and well-settled principles of statutory construction. (*Id.* at p. 746.) "The words of a statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must, to the extent possible, be harmonized, both internally and with each other." (*Ibid.*)

Plaintiffs note that, in other statutes, the Legislature has specified that exemptions relating to licensed collectors only apply to transactions involving a firearm that is a curio or relic under 27 Code of Federal Regulations part 478.11. Plaintiffs specifically identify sections 26970, 27966, and 31700 as examples. They use these statutes to invoke the " 'well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725.)[9] Plaintiffs effectively argue that the Legislature knows how to limit an exception to transactions involving firearms that are curios or relics when that is the Legislature's intent. The principle of statutory construction that supports this interpretation "applies only when the Legislature has intentionally changed or excluded a term by design [citation], and it is only when different terms are used in parts of the *same* statutory scheme that they are presumed to have different meanings." (*Smith v. Rae-Venter Law*

argument that the letter's interpretation is entitled to deference fails at the threshold because the Bureau of Firearms does not have an interpretive advantage over the court. (*Id.* at pp. 12-13 [explaining the two categories of factors].)

[9] "[T]he principle always is subordinate to legislative intent." (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 126.) Defendants argue the statute is not ambiguous and there is a discernible and contrary legislative intent. But, as set forth above, the statute is at least susceptible to plaintiffs' interpretation and we reject the notion that there is a discernible and contrary legislative intent.

*Group* (2002) 29 Cal.4th 345, 364, superseded by statute on other grounds.)  At least one of the statutes identified by plaintiffs meets these criteria.  Section 26970, has origins pre-dating AB 202 and provides an exception that is similar to the licensed collector exemption other than the fact section 26970 states explicitly that it only applies when the firearm involved is a curio or relic.  (§ 26970, subd. (a).)[10]  Sections 26970 and 27535 embrace similar subject matter and demonstrate the Legislature's awareness of how to exempt only transactions involving curios and relics.  (See *In re Khalid H.* (1992) 6 Cal.App.4th 733, 736 ["When a statute omits a provision which another statute embracing a similar subject includes, a different legislative intent for each statute is indicated"]; accord *Hennigan v. United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 8.)  We therefore conclude the Legislature's drafting of the licensed collector exemption in section 27535, subdivision (b)(9), with no reference to the type of handgun purchased, suggests an intent to exempt purchases of any type of handgun.

In support of this interpretation, plaintiffs also rely on the legislative history of Assembly Bill No. 532 (1997-1998 Reg. Sess.) (AB 532), an unsuccessful earlier version of AB 202, which explained the bill would not affect, "The 400 some odd California federally licensed collectors as to any firearm acquisition."[11]  (Assem. Com. on Public

---

[10]  Section 26970, subdivision (a), sets forth an exception to the 10-day waiting period for purchasing a firearm where:  "(1) The firearm is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, or its successor.  [¶] . . . [¶] (3) The sale, delivery, loan, or transfer is made to a person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.  [¶]  (4) The licensed collector has a current certificate of eligibility issued by the Department of Justice pursuant to Section 26710."  This exception was originally signed into law in 1996 and codified in former section 12078, subdivision (t)(1).  (Stats. 1996, ch. 668, § 1; see Stats. 2010, ch. 711, § 6 [statutory reorganization].)

[11]  Plaintiffs also cite to notes relating to AB 532 from the files of the author of both bills. "[T]he statements of an individual legislator, including the author of a bill, are generally

13

Safety, Analysis of Assem. Bill No. 532 (1997-1998 Reg. Sess.) Apr. 8, 1997 [proposed amendment], p. 5.) "As a general rule, unpassed legislation provides ' "very limited guidance" ' when interpreting existing legislation. [Citation.] However, in some circumstances it may be a reliable indicator of existing legislative intent." (*Joannou v. City of Rancho Palos Verdes* (2013) 219 Cal.App.4th 746, 761; see also *Cuevas v. Contra Costa County* (2017) 11 Cal.App.5th 163, 177 ["here the predecessor bills are instructive"].) For instance, this court has previously relied on legislative history of a predecessor bill that had been vetoed by the Governor and was "virtually identical" to the legislation at issue. (*City of Richmond v. Commission on State Mandates* (1998) 64 Cal.App.4th 1190, 1199.) Another appellate court has deemed an expressed relationship between predecessor bills and the statute to be interpreted sufficient to make the legislative history surrounding the unpassed predecessor bills instructive. (See *Cuevas v. Contra Costa County*, *supra*, at p. 177 [concluding unpassed predecessor bills were instructive "because the Assembly Committee on Judiciary acknowledged the relationship between Assem. Bill 1 and its predecessor bills, stating that Assem. Bill 1 'incorporates the concepts or language of the following assembly bills introduced during the regular or special session,' referencing [predecessor bills]"].) We therefore take the view that the legislative history of unpassed bills can, depending on the circumstances, provide some guidance.

Accordingly, we approach the legislative history of AB 532 with caution because the bill died on the Assembly floor and was not considered by the Senate. But at the time of the relevant committee hearing, the Assembly Committee on Public Safety was considering a proposed amendment that added language identical to the licensed collector exemption eventually enacted by AB 202. (Assem. Amend. to Assem. Bill No. 532

not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.)

14

(1997-1998 Reg. Sess.) April 15, 1997, § 2.)  Further, the legislative history of AB 202 explains that it is "substantially similar" to AB 532.  (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 202 (1999-2000 Reg. Sess.) as amended Mar. 10, 1999, p. 5.)  Under these circumstances, we conclude there is some value to the legislative history of AB 532, and it reinforces our conclusion that the exemption applies to licensed collectors regardless of the type of handgun purchased.

The general purpose of section 27535 to prevent straw transactions does not persuade us otherwise.  As plaintiffs observe, other statutes prohibit straw transactions directly.  (§§ 27515, 27520, 27590, subd. (c)(1).)  In fact, these prohibitions pre-date AB 202, and AB 202 was originally added to the same statute (former section 12072) that prohibited straw transactions generally.  (Stats. 1999, ch. 128, § 2.)  While prohibiting the purchase of more than one handgun in 30 days may further impede straw transactions, we cannot conclude that exempting individuals who have gone through the federal licensing process and obtained a certificate of eligibility from DOJ is absurd or necessarily contrary to the Legislature's intent.  This is, perhaps, especially true given the range of other exceptions the Legislature chose to include in section 27535.  We express no opinion on whether the interpretation advanced by DOJ is a wise policy choice.  Our analysis is limited to whether DOJ's interpretation is allowed by the statute that was enacted by the Legislature.

The language of section 27535, its context, and the relevant legislative history together evince an intent to exempt all transactions involving licensed collectors who have a certificate of eligibility from DOJ despite the statute's general goal of preventing straw transactions.  We conclude section 27535, subdivision (b)(9) must be interpreted accordingly.

15

## III.  DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views stated herein.  Plaintiffs Alvin Doe and Paul A. Gladden shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____

RENNER, J.


We concur:


/S/

_____

HULL, Acting P. J.


/S/

_____

DUARTE, J.