Filed 5/18/22  Morillo Construction v. L.A. Community College Dist. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MORILLO CONSTRUCTION, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LOS ANGELES COMMUNITY COLLEGE DISTRICT, <br><br> Defendant and Appellant. | B313361 <br><br> (Los Angeles County Super. Ct. No. 20STCV01263) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed and remanded.

Musick, Peeler & Garrett, Cheryl A. Orr, Richard S. Conn and Peter J. Diedrich for Defendant and Appellant.

Richards, Watson & Gershon, Saskia T. Asamura and T. Peter Pierce for Plaintiff and Respondent.

Appellant Los Angeles Community College District (LACCD) appeals from a judgment entered after the trial court granted summary judgment in favor of Morillo Construction, Inc. (Morillo), on Morillo's claims against LACCD for contractual indemnity, breach of contract, and declaratory relief. We find that the indemnity provision in the contract at issue—a settlement agreement between the parties—does not encompass the qui tam lawsuit filed against Morillo by third party Newt Kellam under the California False Claims Act, Government Code section 12650 et seq. (CFCA). The trial court erred as a matter of law in interpreting the settlement agreement to create a duty on the part of LACCD to defend Morillo against the qui tam lawsuit.

We reverse the judgment and remand for entry of judgment in favor of LACCD on Morillo's complaint.

## FACTUAL BACKGROUND

### The project and Sigma case

LACCD is a California public agency, which operates nine community colleges throughout Los Angeles County. In 2007, Morillo entered into a contract with LACCD to serve as the general contractor on a project at East Los Angeles College (project). Morillo subsequently entered into subcontracts with various subcontractors, including McKinney Drywall, Inc. (McKinney). Morillo began work on the project in 2008.

On April 15, 2009, before the project was complete, LACCD terminated the contract for convenience. As a result, several subcontractors, including McKinney, sued Morillo for damages arising from the project's termination. The cases were consolidated, and the consolidated cases became known as the "Sigma case." Morillo cross-complained against LACCD and

2

others in the Sigma case.  Morillo alleged claims for defamation and intentional interference with prospective economic advantage against LACCD.

LACCD and Morillo commenced arbitration.  The arbitration led to competing petitions to confirm and vacate the arbitration award, resulting in an order remanding the matter to the arbitrator.  Eventually, LACCD and Morillo entered into a settlement agreement (settlement agreement or agreement).

**The settlement agreement**

LACCD and Morillo are the only parties to the settlement agreement. The agreement, effective January 6, 2014, resulted in a $3.4 million payment from LACCD to Morillo in exchange for dismissal of Morillo's cross-complaint in the Sigma case and dismissal of the litigation arising out of the arbitration.

Paragraph 5 of the settlement agreement provided, in part:

> "The Parties mutually, fully, finally and forever release, waive, discharge and exonerate each other and their respective principals, owners, partners, attorneys, guarantors, subsidiaries, successors, indemnitors, predecessors, affiliates, assigns, officers, directors, employees, agents, architects, inspectors, program managers, project managers, completion and follow on contractors, subcontractors, insurance companies, reinsurance companies, and surety companies, from any and all existing or past claims, obligations, costs, fees, expenses, damages, compensation, liens, promises, demands, rights, actions, causes of action, litigation and/or liability, of any kind whatsoever, whether known or unknown, relating to the Project and/or the Dispute."

Paragraph 7 provided:

> "With respect to matters within the scope of the Dispute, the Parties mutually waive their respective

3

rights under the provisions of Section 1542 of the California Civil Code, which reads as follows:

"'A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.'

"In so agreeing, the Parties declare that they understand the full nature, extent and import of their waiver of their rights under Section 1542 of the California Civil Code and have been so advised by their attorneys."

Paragraph 8 provided:

"In the event that either Party institutes an action against any other person or entity ('Released Party') on a claim that is released by that Party pursuant to Section 5 of this Agreement, such instituting Party shall indemnify, hold harmless and defend the other Party of and from any claim, action or demand for indemnification or contribution made or brought by such Released Party, including for all damages, costs, expenses and attorney's fees incurred by the other Party."

Paragraph 9 provided:

"Each Party shall defend and indemnify the other Party against any and all claims, obligations, costs, fees, expenses, damages, compensation, promises, demands, rights, actions, causes of action, litigation and/or liability, of any kind whatsoever, relating to, resulting from or arising out of a breach of a warranty, representation or promise contained in this Agreement."

**Subsequent developments in the Sigma case**

After the settlement agreement was finalized between LACCD and Morillo, LACCD was dismissed from the Sigma case. The claims between the subcontractors and Morillo continued to be litigated. Subcontractor McKinney was represented by Attorney Newt Kellam.

In May 2015, counsel for Morillo submitted a request to the Contractors State Licensing Board for a certified license history for McKinney. Upon review of the licensing history, Morillo discovered that McKinney had multiple license suspensions, with two such suspensions during the time that McKinney worked on the project. Morillo brought a motion to bifurcate the trial of McKinney's claims, in order to first determine whether McKinney was unlicensed and therefore ineligible to pursue claims against Morillo. On June 15, 2016, the Sigma case trial court entered judgment in favor of Morillo against McKinney because McKinney had not been adequately licensed during the time it performed work on the project. Morillo obtained a judgment against McKinney for more than $1.6 million, representing a refund of the money it paid McKinney under the subcontract for McKinney's work on the project. McKinney failed to pay Morillo any part of the judgment.

**The qui tam lawsuit**

On August 13, 2018, McKinney's former attorney, Kellam, filed the qui tam lawsuit in propria persona, acting as a relator under the CFCA on behalf of LACCD. The action, captioned *Los Angeles Community College District ex rel. Newt Kellam v. Morillo Construction, Inc., et al.* (Super. Ct. L.A. County, No. BC717712) (the qui tam lawsuit), alleged 40 violations of the

5

CFCA against Morillo.  As provided in the CFCA, the complaint in the qui tam lawsuit was filed under seal.

The qui tam lawsuit alleged, inter alia, that Morillo's submission of payment applications to LACCD for work on the project by Morillo constituted false claims under the CFCA because Morillo certified in each of those applications that all subcontractors' state licenses were current and valid, without having taken steps to ensure that was true.  Kellam alleged that Morillo had obtained a nearly $3 million windfall from its false statements to LACCD.[1]  LACCD had no knowledge of the action before it was filed.

LACCD received notice of the qui tam lawsuit on August 27, 2018, and received a copy on or about October 3, 2018.

Pursuant to the CFCA, LACCD was required to notify the court of its intention to intervene in the qui tam lawsuit or not.  On October 12, 2018, LACCD filed a notice of election to decline intervention in the qui tam lawsuit.  LACCD objected to Kellam's position as qui tam plaintiff due to a conflict of interest, as Kellam was simultaneously representing a contractor in a different matter against LACCD.  Later, another attorney, Erik McLain, was substituted as counsel in the qui tam lawsuit.

Morillo was served with the summons and complaint in the qui tam lawsuit on January 15, 2019.  On the same day Morillo tendered to LACCD the defense and indemnity of the qui tam lawsuit, taking the position that defense and indemnity were required by the terms of the settlement agreement.  LACCD

---

[1]     Kellam further alleged: "For nearly five years, Kellam invested substantial time and money in the Sigma case but, having lost, would receive no compensation at all.  Kellam was not happy."  (Some capitalization omitted.)

6

interpreted the settlement agreement and applicable law as not requiring it to defend and indemnify Morillo in the qui tam lawsuit, and therefore rejected Morillo's tender.

## PROCEDURAL HISTORY

On January 9, 2020, Morillo filed its complaint in this matter against LACCD, alleging three causes of action: (1) contractual indemnity, (2) breach of contract, and (3) declaratory relief. Morillo took the position that the qui tam lawsuit was an action by LACCD. Morillo alleged that "Kellam, as qui tam plaintiff, brought or instituted the CFCA lawsuit on behalf of LACCD as LACCD's de facto agent, standing in LACCD's shoes." Morillo asserted that LACCD breached the settlement agreement when the qui tam lawsuit was filed on its behalf and through its refusal to intervene and attempt to have the matter dismissed. Morillo's claim for declaratory relief sought a declaration that LACCD had a duty to indemnify and defend Morillo from the qui tam lawsuit.

LACCD denied the allegations of the complaint. The parties filed competing motions for summary judgment on June 1, 2020.

On March 1, 2021, the two motions for summary judgment were heard in the trial court. A minute order issued granting Morillo's motion for summary judgment and denying LACCD's motion for summary judgment. The court later entered a revised proposed judgment in a form to which LACCD stipulated. The court entered judgment for $0 for Morillo but ordered that LACCD immediately assume paying for Morillo's defense in the qui tam action and ordered LACCD to indemnify any judgment or settlement against Morillo in the qui tam lawsuit. The trial court

7

interlineated the revised proposed judgment, adding the word "partial" before the word "judgment."[2]

LACCD timely filed and served its notice of appeal on May 5, 2021.

## DISCUSSION

**I.    Applicable law and standard of review**

Our review of the grant of a motion for summary judgment is de novo.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  Where there are cross-motions for summary judgment, the denial of summary judgment is also reviewed de novo.  (*Doe v. Becerra* (2018) 20 Cal.App.5th 330, 336.)

If the trial court has construed contractual provisions without the aid of extrinsic evidence, interpretation of those provisions is a question of law for this court.  (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1275.)  A contract providing for indemnity is generally construed under the same rules as govern the interpretation of other contracts.  (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552 (*Crawford*).)  However, language providing indemnification beyond the doctrines of implied or equitable indemnity must use "clear and explicit" language and "will be construed strictly against the indemnitee."  (*Ibid.*)

---

[2]    Although the trial court interlineated the word "partial" before the word "judgment," the judgment adjudicated all three causes of action and ordered LACCD to immediately commence paying all of Morillo's expenses and indemnify Morillo for any settlement or judgment in the qui tam action.  Therefore, we treat this as an appeal from a final judgment.

8

When interpreting a contract, it must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) The rules provided in the Civil Code should be applied when ascertaining the intention of the parties to a contract. (Civ. Code, § 1637.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) If the contract is in writing, "the intention of the parties is to be ascertained from the writing alone, if possible . . . ." (Civ. Code, § 1639.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) Finally, the words of a contract generally must "be understood in their ordinary and popular sense, rather than according to their strict legal meaning." (Civ. Code, § 1644.)

To the extent that we must undertake statutory interpretation of the CFCA, the standard for statutory construction is similar. We review the plain language of the statute to ascertain and effectuate legislative intent, giving the words their usual and ordinary meaning. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) We harmonize various parts of a statute by considering them in the context of the statutory framework as a whole. (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487.)

## II. The CFCA

The CFCA "is designed to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities by authorizing private parties (referred to as qui tams or relators) to bring suit on behalf of the

government. [Citation.] The ultimate purpose of the Act is to protect the public fisc." (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1677.) It is patterned after the federal False Claims Act, title 31 United States Code section 3729 et seq. (*City of Hawthorne*, at pp. 1676-1677.) Given the close similarity of the CFCA to the False Claims Act, it is appropriate to consider federal cases for guidance in interpreting the CFCA. (*San Francisco Unified School Dist. ex rel. Contreras v. First Student, Inc.* (2014) 224 Cal.App.4th 627, 638.)

A lawsuit under the CFCA may be initiated by the Attorney General (Gov. Code, § 12652, subd. (a)(1)); the "prosecuting authority of a political subdivision" (*id.*, subd. (b)(1)); or a private person, acting as a qui tam plaintiff (*id.*, subd. (c)(1)). Governmental entities may not sue as qui tam relators. (*State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1230.) When an individual qui tam plaintiff initiates an action pursuant to Government Code section 12652, subdivision (c)(1), the qui tam plaintiff brings the action "for the person and . . . for a political subdivision in the name of the political subdivision." Thus, the individual brings the action on behalf of the individual and the government entity, although the government entity is only a nominal plaintiff at the time of filing.[3]

---

[3] Qui tam plaintiffs are exempt from the requirements of the Tort Claims Act, Government Code section 900 et seq. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1214.) The *Wells* court concluded that qui tam lawsuits under the CFCA are "brought, not only for the qui tam plaintiff, but '*for* the State of California *in the name of the state*, if any state funds are involved, or *for* a political subdivision *in the name of the political*

10

When a private party initiates a qui tam lawsuit on behalf of a political subdivision, the political subdivision must advise the court whether it wishes to proceed with the action. (Gov. Code, § 12652, subd. (c)(7)(D).) "The governmental entity on behalf of which a qui tam plaintiff sues under the CFCA does not become a party to the suit unless and until the entity intervenes in the action." (*Armenta ex rel. City of Burbank v. Mueller Co.* (2006) 142 Cal.App.4th 636, 641.) If the political subdivision declines to proceed with the action, "the qui tam plaintiff shall have the right to conduct the action." (Gov. Code, § 12652, subd. (c)(7)(D)(ii).) Once the political subdivision declines to proceed with the action, it is not considered to be the prosecuting party.[4] Instead, the qui tam plaintiff is the prosecuting party. This is illustrated through one of the attorney's fees provisions, which allows a prevailing defendant in such an action to "award to the defendant its reasonable attorney's fees and expenses against the party that proceeded with the action." (Gov. Code, § 12652, subd. (g)(9)(A).)

---

*subdivision*, if political subdivision funds are exclusively involved.'" (*Wells*, at p. 1214, original italics.) The Tort Claims Act "expressly excludes from the claim presentment requirement '[c]laims by the [s]tate or by a state department or agency or by another local public entity.'" (*Wells*, at p. 1214, quoting Gov. Code, § 905, subd. (i).) Because a qui tam plaintiff "stands in the shoes" of the state or political subdivision, the qui tam plaintiff is "within the [Tort Claims Act] exemption for claims by the state or a local public entity." (*Wells*, at p. 1214.)

[4]     Due to the nature of the qui tam lawsuit, the political subdivision remains a nominal party, as the qui tam plaintiff continues to prosecute the matter on behalf of the government entity.

11

If the political subdivision chooses to proceed with the action, it "shall have the primary responsibility for prosecuting the action." (Gov. Code, § 12652, subd. (e)(1).) However, the qui tam plaintiff retains "the right to continue as a full party to the action." (*Ibid.*) The prosecuting party "may seek to dismiss the action for good cause notwithstanding the objections of the qui tam plaintiff" (Gov. Code, § 12652, subd. (e)(2)(A)), however the court must allow the qui tam plaintiff to oppose the motion to dismiss, and the court alone has the authority to determine whether the prosecuting party has shown the requisite good cause for dismissal of the action.

Even if the state or political subdivision declines to intervene in the qui tam action, any civil penalty or damages recovered in the qui tam lawsuit will inure in part to the governmental entity. However, the qui tam plaintiff is entitled to "an amount that the court decides is reasonable for collecting the civil penalty and damages on behalf of the government . . . not less than 25 percent and not more than 50 percent of the proceeds of the action or settlement." (Gov. Code, § 12652, subd. (g)(3).)

## III. The settlement agreement does not create an obligation on LACCD to defend or indemnify Morillo in the qui tam lawsuit

In determining whether the settlement agreement created an obligation on the part of LACCD to defend or indemnify Morillo against the qui tam lawsuit, we must first look to the language of the settlement agreement. (*Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co.* (1991) 234 Cal.App.3d 1724, 1737 ["the courts look first to the words of the contract to determine the intended scope of the indemnity agreement"].) We

consider each applicable paragraph below and conclude that under the plain language of the settlement agreement LACCD owes no obligation to indemnify or defend Morillo against the qui tam lawsuit.

### A.    *Paragraph 5 releases*

Through the settlement agreement, "The Parties" released each other "and their respective principals, owners, partners, attorneys, guarantors, subsidiaries, successors, indemnitors, predecessors, affiliates, assigns, officers, directors, employees, [and] agents," among others, "from any and all existing or past claims . . . relating to the Project and/or the Dispute."  The agreement does not purport to release the claims of third parties.[5]

While the trial court held that the qui tam lawsuit "falls squarely within the scope of the Settlement Agreement's releases of claims 'known or unknown' relating to the Project and the Dispute, defined therein, and the waiver of Civil Code § 1542," the trial court neglected to note that these broad releases applied only to claims between the parties to the agreement—LACCD and Morillo—and each party's respective agents and assigns. Kellam, the instigator of the qui tam lawsuit, was not a party to the settlement agreement and did not release his right to file the qui tam lawsuit.

The qui tam lawsuit was not within the scope of paragraph 5 of the settlement agreement.

---

[5]    Morillo does not attempt to argue that Kellam was the "agent" of LACCD or held any of the other relationships with LACCD specified in paragraph 5.

13

**B.** *Paragraph 7 waiver*

Paragraph 7 provides that "With respect to matters within the scope the Dispute, the Parties mutually waive their respective rights under the provisions of Section 1542 of the California Civil Code . . . ." The parties further attested that they understood "the full nature, extent and import of their waiver of . . . rights under Section 1542."

Paragraph 7 made no mention of lawsuits filed by third parties. Nor does Morillo suggest that LACCD had the authority to waive any third party's right to unknown claims. Kellam, the instigator of the qui tam lawsuit, was not a party to the settlement agreement and did not release any rights thereunder.

The qui tam lawsuit was not within the scope of the waiver found in paragraph 7 of the settlement agreement.

*Belasco v. Wells* (2015) 234 Cal.App.4th 409, relied upon by Morillo, does not suggest otherwise. While the *Belasco* court confirmed the unequivocal nature of the express Civil Code section 1542 waiver in the contract between the parties in that case, it is distinguishable from the present matter because it involved a lawsuit filed by a party bound by the release and section 1542 waiver. (*Belasco*, at pp. 417-418.)[6] In contrast, in the matter before us, the qui tam lawsuit was filed by a third party who was not a party to the settlement agreement or the release. Releases generally do not bind nonparties to a

---

[6] *Winet v. Price* (1992) 4 Cal.App.4th 1159 and *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048 are distinguishable for the same reason: both involve subsequent lawsuits filed by parties bound by the section 1542 waiver. The release at issue in this matter only binds Morillo and LACCD, not Kellam.

14

settlement agreement. (*St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mutual Ins. Co.* (2012) 210 Cal.App.4th 645, 657.) Kellam's filing of the qui tam lawsuit did not constitute a breach of the release by LACCD.

### C. *Paragraph 8 indemnity clause*

Paragraph 8 of the settlement agreement contains an indemnity provision. It provides that "[i]n the event that either Party institutes an action against any other person or entity ('Released Party') on a claim that is released by that Party pursuant to Section 5 of this Agreement, such instituting Party shall indemnify, hold harmless and defend the other Party" for all "damages, costs, expenses and attorney's fees incurred by the other Party."

The plain language of paragraph 8 limits its applicability to the parties to the settlement agreement and only applies if one of the parties "institutes" an action. LACCD did not institute the qui tam lawsuit. The qui tam lawsuit was initiated solely by Kellam. LACCD was required by statute to notify the court of its intention to intervene, or not, in the qui tam lawsuit. LACCD declined to intervene and become a party to the lawsuit. As the qui tam lawsuit was solely instituted by Kellam, not LACCD, the indemnity language of paragraph 8 is inapplicable.

Further, the remaining language of the indemnity provision shows that the provision is applicable only when one of the parties to the settlement agreement—i.e., either LACCD or Morillo—initiates an action against a party "released by that Party pursuant to Section 5 of this Agreement." Thus, by its express language, the indemnity provision applies only when one of the parties to the agreement initiates a lawsuit against one of the entities released in paragraph 5 (released party). Morillo

15

would only be entitled to indemnity if LACCD filed suit against a released party, and that released party sought indemnification or contribution from Morillo.

LACCD did not file a lawsuit against a released party. Kellam did. As emphasized above, Kellam was not a party to the settlement agreement and was not bound by its covenants. Kellam is a third party to the settlement agreement who brought an action under the CFCA. The indemnification provisions of paragraph 8 do not apply to the qui tam lawsuit.

### D. *Paragraph 9 indemnity provision*

Paragraph 9 creates another indemnity obligation in the settlement agreement. Under paragraph 9, the parties agreed that "[e]ach Party shall defend and indemnify the other Party against any and all claims, obligations, costs, fees, . . . relating to, resulting from or arising out of a breach of a warranty, representation or promise contained in this Agreement."

Paragraph 9 does not apply because Morillo has not alleged any breach of the settlement agreement by LACCD. LACCD did not institute the qui tam lawsuit, thus LACCD did not breach its promise under paragraph 5 to release all claims against Morillo. Nor did LACCD breach its waiver of unknown claims under paragraph 7. There was no obligation on the part of LACCD to indemnify or defend Morillo against the qui tam lawsuit. Kellam's act of filing the qui tam lawsuit was not an act that can be attributed to LACCD. Thus, LACCD has not breached any "warranty, representation or promise" contained in the settlement agreement.

Morillo implies that LACCD is guilty of breaching the agreement because LACCD failed to intervene in, and request

16

dismissal of, the qui tam lawsuit.[7]  Morillo points out that under Government Code section 12652, subdivision (e)(2)(A), a government entity that intervenes in a qui tam lawsuit "may seek to dismiss the action for good cause notwithstanding the objections of the qui tam plaintiff."  However, LACCD did not have the power to unilaterally dismiss the qui tam lawsuit.  LACCD would have had to make a motion to dismiss the lawsuit, to which Kellam had the right to object.  Ultimately it would be the trial court's decision, not LACCD's, to grant any dismissal. (Gov. Code, § 12652, subd. (e)(2)(A).)

Further, nothing in the settlement agreement requires LACCD to intervene in, or seek to dismiss, a qui tam lawsuit.  In the absence of clear and explicit language in the indemnity agreement, we must construe it "strictly against the indemnitee." (*Crawford, supra*, 44 Cal.4th at p. 552.)  Morillo's argument that LACCD breached the settlement agreement by failing to intervene in, and seek dismissal of, the qui tam lawsuit must fail.[8]

## IV. LACCD has no obligation to indemnify or defend Morillo given its status as a potential beneficiary of the qui tam lawsuit

As set forth above, the settlement agreement does not apply to lawsuits instituted by third parties, nor does it require

---

[7]    Morillo claims that by its actions, LACCD "allow[ed]," or "deliberately greenlighted," the qui tam lawsuit.

[8]    Because we determine that the plain language of the settlement agreement does not require LACCD to indemnify and defend Morillo in the qui tam lawsuit, we decline to address the parties' competing arguments about public policy and the applicability of Civil Code section 1668.

17

LACCD to intervene in any such lawsuits. Therefore, LACCD was not required to indemnify or defend Morillo in the qui tam lawsuit.

Morillo argues that due to the nature of qui tam lawsuits under the CFCA, LACCD should be considered a plaintiff in that lawsuit and should not be relieved of its obligations under the settlement agreement. Preliminarily, we note that the language of the settlement agreement does not prohibit LACCD from benefiting from third party litigation. The settlement agreement only requires indemnification or defense where LACCD *institutes* an action, which it has not done.[9]

Morillo makes much of the language that LACCD used in its notice to the court declining to intervene in the lawsuit. Morillo points out that LACCD stated the following:

> "Since [LACCD] has elected not to intervene in this action, the Relator now has authority to pursue this action in the name of [LACCD]. Government Code Sections 12652 (c)(1) and (f)(1).) In essence, the Relator '*stands in the shoes*' of [LACCD] in prosecuting this action." (Original underscoring and italics.)

Morillo claims that LACCD "punctuated its keen interests in the process and outcome" of the qui tam lawsuit by objecting that Kellam might have a conflict of interest that interfered in its ability to represent LACCD's interests in the qui tam lawsuit.

---

[9] We acknowledge the parties' competing claims regarding the public policy considerations at issue in the matter. However, because the plain language of the settlement agreement dictates the outcome in this case, we need not discuss the parties' public policy arguments.

18

Morillo cites no authority for its position that LACCD's statements above rendered LACCD somehow responsible for initiating or prosecuting the action. LACCD's statements appear to be an accurate representation of the law regarding Kellam's right to bring the case, and LACCD's objection to Kellam as qui tam plaintiff for valid reasons does not render LACCD responsible for filing the lawsuit.

Morillo emphasizes that if LACCD, instead of Kellam, had filed the qui tam lawsuit, there is no question that LACCD would be in violation of the settlement agreement. This is true. Morillo argues that just because Kellam is the "nominal plaintiff," LACCD should not be relieved of its duties. However, Kellam's status as instigator of the qui tam lawsuit is precisely the reason that the qui tam lawsuit does not fall under the scope of the settlement agreement. Kellam was not a party to the settlement agreement. Kellam had a statutory right to file the qui tam lawsuit. (Gov. Code, § 12652, subd. (c)(1).) LACCD had no control over Kellam's actions and had no right to prohibit him from filing the qui tam lawsuit. Contrary to Morillo's arguments, LACCD cannot be described as having constructively filed the qui tam lawsuit. LACCD cannot be held responsible for actions of third parties over whom LACCD has no control.[10]

---

[10] Morillo cites Civil Code section 3519, which provides, "He who can and does not forbid that which is done on his behalf, is deemed to have bidden it." Because LACCD had no power to "forbid" Kellam from filing the qui tam lawsuit, the statute is irrelevant.

**DISPOSITION**

The judgment in favor of Morillo is reversed, and the superior court is directed to enter judgment in favor of LACCD. LACCD is awarded its costs on appeal.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
ASHMANN-GERST, J.